## UNITED STATES v. ONE CADILLAC AUTOMOBILE.

### SAME v. FORD AUTOMOBILE.

(District Court, W. D. Tennessee, W. D. May 28, 1924.)

Nos. 2475, 2572.

I. **Arrest** ⬤⟳63(4), 7I—Officers observing unlawful narcotic sale held to have reasonable grounds for arrest and search.

Where officers, having information that suspect was unlawfully engaged in narcotic business and that he would make sale to negro at particular time and place, followed negro, saw him enter suspect's car, and as it drove away saw parties in act of consummating sale,

they had reasonable grounds to arrest suspect and search his person and car.

**2. Internal revenue ☜46—Automobile used by narcotic peddler held subject to forfeiture.**

Where one engaged in sale of narcotics met a customer by appointment, took him into automobile, and drove away, making the sale in the car, the car was subject to forfeiture for being used in transporting, removing, and concealing narcotics.

**3. Internal revenue ☜46—Forfeiture statute includes automobiles; "vehicle."**

Rev. St. § 3450 (Comp. St. § 6352), relating to forfeiture of vehicles used in violating internal revenue law, *held* to include automobiles, though they were not in use when statute enacted.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Vehicle.]

**4. Internal revenue ☜46—Use of automobile by addict with narcotics on person not evidence warranting forfeiture.**

Forfeiture of automobile as used in transporting, removing, or concealing narcotics *held* not justified, where driver was an addict and had small quantity of morphine on his person, with appliance for administering it; mere traveling in automobile not being sufficient evidence of unlawful use.

Libels by the United States against one Cadillac automobile (motor No. 61–D467) and against one Ford automobile (motor No. 5462511). Decree for the United States in the first-entitled case, and decree of dismissal in the other action.

ROSS, District Judge. In each of these cases the government sought to enforce libel proceedings against the respective automobiles on the ground that each was being unlawfully used in the transportation of narcotics.

In No. 2475, upon agreed state of facts, it appears that on May 24, 1922, one John Bellomini was under surveillance by the narcotic officers of the United States by reason of information which had been conveyed to them; that they had information Bellomini was to sell certain narcotics to a negro at a particular place on the date mentioned; that Bellomini approached this place in the Cadillac automobile in question, and the negro entered the car, whereupon the car left this point. It was pursued by the officers, and as they drew alongside of the car in question they saw Bellomini on the front seat, apparently handing something back to the negro, who was on the back seat, and they thereupon arrested both Bellomini and the negro, found that Bellomini was in the possession of two bottles of narcotics, one being morphine and the other cocaine, and that the negro was handing to Bellomini, or

counting out and placing in Bellomini's hand, money for the narcotics. The cocaine was unstamped. It further appears that Bellomini had bought this car for his sister, but that it was used indiscriminately and at will by him, his sister, and other members of the family.

[1] It appears that the only questions seriously presented are the right of the officers to make the arrest and search, and as to whether or not the automobile was being used in the removal and concealment of the narcotics within the meaning of the law. There can be no question of the right of the officers to make the arrest and the search which followed. They had information that Bellomini was unlawfully engaged in the narcotic business; that he would make a sale to the negro at a particular time and place. Acting upon this information, they followed the negro, saw Bellomini drive up in his car, saw the negro get into the car, saw the car drive away, and as they approached the car saw what appeared to be and proved to be the parties in the act of making the sale, in that the negro was counting the money out to Bellomini for which he was to receive the narcotics. When Bellomini was arrested, the bottles of narcotics were found on his person. Clearly the officers had reasonable grounds upon which to act in making the arrest and the search. Kurtz v. Moffitt, 115 U. S. 487, 6 S. Ct. 148, 29 L. Ed. 458; Boyd v. U. S., 142 U. S. 450, 12 S. Ct. 292, 35 L. Ed. 1077; Hughes v. State, 145 Tenn. 545, 238 S. W. 588, 20 A. L. R. 639; Amos v. U. S., 255 U. S. 313, 41 S. Ct. 266, 65 L. Ed. 654; Gould v. U. S., 255 U. S. 298, 41 S. Ct. 261, 65 L. Ed. 647; U. S. v. Rembert (D. C.) 284 F. 996; Milam v. U. S. (C. C. A.) 296 F. 629; Jones v. U. S. (C. C. A.) 296 F. 632, and authorities cited in the above cases.

[2] It is equally clear that the car was being used for the removal and concealment of narcotics. The fact that Bellomini may have had the narcotics in his pocket would not make it any the less true that, however he may have carried them, he was using the car for that purpose, as his object in going to the place where the negro was, and in taking the negro into the car and driving away, was in order that he might make the sale, and the sale was being made in the car, and certainly it could not be said that under the circumstances the car was not being used for transporting, removing, and concealing the narcotics. This was his very object in having the car at the time and place, and in being in the car. He was using the car as his own, clearly, with the

consent of his sister, if it belonged to his sister; so that it results the government is entitled to the remedy sought, and an order as to this case will be accordingly entered.

In case No. 2572 it is agreed that on November 22, 1922, the narcotic officers of the United States, together with certain police officers of the city of Memphis, by reason of information relative to George Dunwood that he was unlawfully engaged in handling and selling narcotics, went to his home; that while secreted near thereto they saw an addict coming from the home or near the home of Dunwood; that when this addict was apprehended he was found to be in possession of a quantity of unstamped morphine, which he informed the officers he had obtained from Dunwood; that the officers then started to the home of Dunwood, but before reaching the house saw him leaving in the Ford automobile in question in this case. He was pursued, overtaken, arrested, and searched, and upon search being made in his inside pocket there was found about 30 grains of unstamped morphine. The officers had a search warrant for the home of Dunwood, but not for him or his car. They found in his home about nine ounces of unstamped narcotics.

The Remedial Loan Society has filed its petition in this case, setting up ownership to the car in question, and raising the same questions raised in the preceding case, and the further question that section 3450 (Comp. St. § 6352) does not apply to automobiles, because at the time it was enacted they were not in the contemplation of the act.

[3] Under the circumstances, the same rule would apply as to the right of the officers to make the arrest as in the Bellomini Case, and it would seem that they were justifiable in arresting the defendant and searching his person. The contention made that the section would not apply to automobiles is not sound. The wording of the act is broad enough to cover any character of vehicle which might be used for the unlawful purposes mentioned in the act, and the mere fact that automobiles were not then in use would not limit the act to only such vehicles as were in existence at that time. If this construction could be placed upon the act, it would necessitate the passage of a new measure every time a material change might be made in any kind of carriage or vessel.

[4] The more serious question in this case is whether or not the automobile was being used for the removal or concealment of narcotics. It appears Dunwood was an addict; that, at the time he was arrested with the 30 grains of morphine in his pocket, he was also found in possession of a needle for use in administering it. It can hardly be said that the automobile was being used for the purpose of removing or concealing the narcotics. The mere fact that he was traveling in the automobile would not, within itself, be sufficient evidence of the unlawful use of the vehicle. As a matter of course, the narcotics were being removed by means of the automobile, because Dunwood, with the narcotics on his person, was in the automobile; but this does not necessarily imply that, within the meaning of the law, the automobile was being illegally used. More is necessary in order to work a forfeiture of a vehicle than to merely show a state of facts such as is presented by this case. There must be evidence showing that the vehicle was being used for the purpose of either storing or removing the untax-paid commodity. One with untax-paid commodities on his person might desire to go from one particular point to another particular point, and in so doing make use of an automobile; but if his object was simply removing himself from one place to another, and the vehicle was used as a mere convenience so to do, with no intention on his part of removing or concealing therein the untax-paid commodities, but that they were simply carried by reason of the fact that they chanced to be at that time on his person, such acts would not warrant a forfeiture of the vehicle. The law contemplates the use of the vehicle as a means or medium of concealing or removing the prohibited article, and not a mere chance use thereof.

In other words, in this case the person and not the vehicle was the offender. Especially is this view strengthened by the fact appearing that Dunwood was engaged in the grocery business, and there is nothing in the record to negative the idea that he may have been merely on his way from his home to his grocery. It results that in this case the proceedings will be dismissed.