### COMMERCIAL CREDIT CO. v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. April 6, 1925.)

No. 4241.

**1. Internal revenue ☞46—Transportation of whisky held "removal" within vehicle forfeiture statute.**

The transportation of whisky, on which internal revenue tax is unpaid, though such transportation is not by the distiller, but by a later owner under no legal duty to pay the tax, is a "removal" within Rev. St. § 3450 (Comp. St. § 6352), providing for the forfeiture of the vehicle used.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Remove —Removal.]

**2. Internal revenue ☞2, 46—Statutes imposing per gallon tax on liquor repealed by Prohibition Act as to liquor illegally manufactured; transportation of moonshine held not to subject to forfeiture vehicle used.**

The provision of National Prohibition Act, tit. 2, § 35 (Comp. St. Ann. Supp. 1923, § 10138½v), prohibiting the issuance in advance of tax-paid stamps for illegal manufacture of liquor, is in direct conflict with and repeals the provisions of prior internal revenue statutes imposing a per gallon tax on liquors, so far as relates to those illegally manufactured, and a mere transporter of moonshine whisky is not chargeable with an intent to defraud the United States of a tax thereon, which renders the vehicle used subject to forfeiture under Rev. St. § 3450 (Comp. St. § 6352).

**3. Internal revenue ☞2—Scope of Willis-Campbell Act, stated.**

The re-enactment by Supplemental Act Nov. 23, 1921, § 5 (Comp. St. Ann. Supp. 1923, § 10138⅔c), of "all laws in regard to the manufacture and taxation of and traffic in intoxicating liquor, and all penalties for violations of such laws" which may have been impliedly repealed by the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), does not include provisions of Rev. St. § 3450 (Comp. St. § 6352), which only inciden-

5 F.(2d)—1

tally affects liquor taxation where such provisions are in direct conflict with those of the Prohibition Act.

**4. Internal revenue ☞46 — Statutes applicable to forfeiture of vehicle used in transportation, stated.**

Where a vehicle used for the illegal transportation of liquor is subject to forfeiture under National Prohibition Act, tit. 2, § 26 (Comp. St. Ann. Supp. 1923, § 10138½mm), it is not forfeitable under Rev. St. § 3450 (Comp. St. § 6352); the two statutes being in direct conflict as to the rights of a good-faith owner or lienholder.

In Error to the District Court of the United States for the Western Division of the Northern District of Ohio; John M. Killits, Judge.

Libel by the United States against one automobile, with the Commercial Credit Company as intervening claimant. Order of forfeiture, and claimant brings error. Reversed and remanded.

Joseph S. Graydon, of Cincinnati, Ohio, and Duane R. Dills, of New York City (Wm. B. Devlin, of Toledo, Ohio, and Lawrence Maxwell, of Cincinnati, Ohio, on the brief), for plaintiff in error.

Miles E. Evans, Asst. U. S. Atty., of Cleveland, Ohio (A. E. Bernsteen, U. S. Atty., and Paul J. Mullen, Asst. U. S. Atty., both of Cleveland, Ohio, on the brief), for the United States.

Before DENISON, DONAHUE, and MOORMAN, Circuit Judges.

DENISON, Circuit Judge. While an automobile was being used for the transportation of illicit whisky, the car and contents were seized by federal prohibition agents, acting under section 26, tit. 2, of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½mm). Those in charge of

the car were prosecuted and convicted under that act, but not otherwise. Thereupon the United States brought a libel against the automobile, alleging the foregoing facts, and further that the whisky being transported was subject to a tax of $4.20 per gallon by the Revenue Act of 1918 (40 Stat. 1057), and was being removed by means of the automobile with intent to defraud the United States of such tax, and praying that the automobile be condemned and confiscated, pursuant to section 26 of the National Prohibition Act, and pursuant to R. S. § 3450 (U. S. Comp. St. § 6352). Thereupon there issued to the marshal a warrant of seizure and a monition. In response thereto, the Commercial Credit Company, as intervening claimant, answered, showing that it was the good-faith owner of a duly recorded purchase-money chattel mortgage upon the automobile, and that neither it nor its assignor, the original vendor, had any knowledge or any reason to suspect that the automobile would be used, or was being used, for any unlawful purpose. Thereupon it prayed recognition of its lien for the unpaid balance. Upon the hearing, the facts alleged in the intervening petition were admitted, but the court held that section 3450 was applicable, and entered the judgment of condemnation, review of which is here sought.

The case presents three substantial questions, measurably but not wholly distinct. The first is whether such transportation as here occurred, if it had been before the passage of the National Prohibition Act, would have been that "removal" which section 3450 denounces. The second is on the assumption that the first is answered in the affirmative, and is as to the status in which such transportation has now been put by the passage of the National Prohibition Act and the Willis-Campbell Act (42 Stat. 222). The third assumes that the right of condemnation under section 3450 would otherwise exist, and is as to the effect of the government's action in seizing under section 26 and prosecuting and convicting under that section the persons transporting. These questions have given rise to a great variety of opinion. These decisions, so far as we observe them, are cited and collected in the margin.[1] Be-

fore discussing these questions, we may well notice that the government's theory will carry condemnation very far. If the theory is correct, every automobile in which any quantity of nontax-paid liquor has been carried is absolutely forfeit, regardless of the participation, guilty knowledge, or even negligence of the title or lienholder. All titles and liens upon this kind of property become most unstable and unsafe. As to the first and second questions, our initial attention will be challenged by testing the affirmative theory on an extreme case, but one short of which it seemingly cannot stop. If the automobile driver is carrying in his pocket for the purpose of sale one unstamped half-ounce package of morphine, on which the unpaid stamp tax is one cent, is the automobile to be totally condemned?

[1] Coming to the first: It is to be noted that while section 3450 says "removed, deposited or concealed," the libel in this case charges only "removal" and does not charge "deposit or concealment." Hence we are not directly called upon to consider this phrase "deposit or concealment." The claimant's contention is that at the time section 3450 was enacted, as well as when it was re-enacted in the Revised Statutes, the internal revenue system contemplated a place of manufacture or of storage, and a tax which was payable as a condition of storage at or of removal from that place, and hence that a proper construction of the act reaches only a removal from that place, leaving the tax

---

[1] As to "removal with intent, etc.," and "transportation": U. S. v. One Ford Truck (D. C. Wash.) 286 F. 204; U. S. v. One Kissel Car (D. C. Ariz.) 289 F. 120; Id. (C. C. A. 9) 296 F. 688; U. S. v. Premier Auto (C. C. A. 9) 297 F. 1007; U. S. v. Studebaker Auto (D. C. Tex.) 298 F. 191, 193; U. S. v. One Cadillac Auto (D. C. Ill.) 292 F. 773, 775; U. S. v. Mangano (C. C. A. 8) 299 F. 492; U. S. v. One Buick Auto (D. C. Cal.) 300 F. 584; U. S. v. One Buick Auto (D. C. Cal.) 1 F.(2d) 997; U. S. v. One Cadillac Auto (D. C. Tenn.) 2 F.(2d) 886.

As to effect of Willis-Campbell Act upon 3450; and as to the existence of a "tax thereon" and "direct conflict": U. S. v. One Hudson Car (D. C. Mich.) 274 F. 473; One Ford Car v. U. S. (C. C. A. 8) 284 F. 823; U. S. v. American Brewing Co. (D. C. Pa.) 296 F. 772, 774; U. S. v. Deutsch (D. C. N. J.) — F.(2d) —, not yet reported; U. S. v. One Ford Coupé (C. C. A. 5) — F.(2d) —, not yet reported. U. S. v. One Haynes Auto (C. C. A. 5) 274 F. 926; The Cherokee (D. C. Tex.) 292 F. 212; U. S. v. One Bay State Roadster (D. C. Conn.) 2 F.(2d) 666; U. S. v. Milstone (C. A. D. C., March 2, 1925) — F.(2d) —; U. S. v. Simms (C. A. D. C., March 2, 1925) 6 F.(2d) —; U. S. v. One Ford Auto, Morris Co., Intervener (D. C. Tenn.) 1 F.(2d) 654; U. S. v. One Ford Auto (D. C. Tenn.) 2 F.(2d) 882.

As to election between section 26 and R. S. § 3450: U. S. v. Torres (D. C. Md.) 291 F. 138; U. S. v. One Ford Auto, Commercial Cr. Co., Intervener (D. C. Tenn.) — F.(2d) —, not yet reported. U. S. v. 385 Bbls., etc. (D. C. N. Y.) 300 F. 565.

unpaid. It is then said that by such removal (or deposit or concealment) by the person charged with the duty of paying the tax, the offense is completed, and it does not again arise upon a subsequent transportation by some one else in the way naturally incident to the sale of any commodity. The article here transported is said to have been moonshine whisky, but there is nothing to indicate that the transporters were distillers, or acting for the distillers. The natural inference, and the one which we accept for the purposes of the case, is that they had bought this whisky, mediately or immediately, from the distillers and were transporting it in connection with a resale. It must also be inferred that they knew or had reason to know that no tax had been paid.

The duty of the distillers (before 1920) was to deposit this liquor in their bonded warehouse (after temporary storage in the receiving cistern, R. S. § 3267 [Comp. St. § 6005]) and to pay the tax before removal therefrom (Sundry Stats., e. g., U. S. Comp. St. §§ 5986 and 6028b). If in violation of law they took it elsewhere from the still, the per-gallon tax was to be assessed by the commissioner upon the distillers (R. S. § 3253 [Comp. St. § 5988]), who were made personally liable. Those who merely transport, after one removal, are seemingly under no duty to pay the tax. We find no statute imposing that duty. It does not seem to be a strong or violent inference, properly supporting a presumption of law, that one who is not in collusion with or aiding the defaulting taxpayer, and who merely transports for his own purposes the nontax-paid article, is thereby guilty of intent to defraud the government out of the tax. If there were continuing liens upon the liquor itself for the tax, the inference might be stronger; but we find no statute creating such a lien. The lien is given against the distillery. True, the tax "attaches" to the liquor when made; but this, without more, indicates rather a perfected, though unmatured, duty by the distiller to pay, than an enforceable lien.

Further, "removed" and "transport" are not necessarily synonymous. The first more distinctly implies a taking away from an existing position and hence is particularly applicable to those cases where the paying of the tax is a condition of the right to change the article from a fixed to a transitory status.

We do not feel at liberty to follow out this first question to an independent conclusion. In the Goldsmith-Grant case, 254 U. S. 505, 41 S. Ct. 189, 65 L. Ed. 376, the transporting in an automobile of nontax-paid liquor was under consideration. So far as the opinion shows the record did not indicate, any more than the present one does, that the persons transporting were distillers or in collusion with them. It is true that the argument, that mere transportation by a later owner is not the removal of section 3450, was not considered in the opinion, if indeed it was presented; and it is true that for this reason the Supreme Court might well regard the question as not concluded by that opinion; but we think we must interpret it as obligatory upon us to its full apparent extent, and as requiring us to answer in the affirmative the above stated first question.

[2] Coming to the second question: Assuming that the transportation here existing was "removal," within the original meaning of section 3450, is the pertinent clause of that section now in force to the extent necessary to reach this particular transaction? It is obvious that the old revenue laws were repealed by the National Prohibition Act as to two classes of their provisions: First, those where there was repeal in terms; and, second, those where the new provisions were so directly in conflict with the old that both could not stand together; and, although the second kind of repeal is called one by implication, it might well be called express. The term "implied repeal" covers also a third class, being those further cases where, although there is no direct conflict, the intent of the Legislature, determined according to settled canons of construction, is inferred to the effect that the new provision was intended to supersede the old. In the Yuginovitch Case, 256 U. S. 450, 41 S. Ct. 551, 65 L. Ed. 1043—interpreting the decision in the aspect here important—it was held that where the same act was an offense, both under the old law and the new, and where the new law provided therefor another and a lesser punishment or penalty, there was an implied repeal [of the above-stated third class]. Applying this decision, we held in the Lewis Case, 280 F. 5, that in so far as section 3450 might apply to the same transportation which was the subject of section 26 of the National Prohibition Act, section 3450 was no longer in force. We pointed out other considerations that led us to suggest a "direct conflict" between the pertinent aspect of section 3450 and the National Prohibition Act, but we did not reach any conclusion thereon.

Then came the Willis-Campbell Act of November 23, 1921. As interpreted in Stafoff Case, 260 U. S. 477, 43 S. Ct. 197, 67 L.

Ed. 358, this act recognized all repeals by implication (of the third class) then existing by the effect of the National Prohibition Act and the Yuginovitch Case, and as to these old provisions, thus impliedly repealed, re-enacted them, making express, though seemingly unnecessary, declaration that existing repeals which were the result of "direct conflict" should remain undisturbed. Thus the Lewis Case ceases to be continuing authority, but the question whether there is direct conflict between the National Prohibition Act and this part of section 3450, or any other provision of the old law on which forfeiture by section 3450 depends, remains open.

The question of "intent to defraud" as bearing on the meaning of "removal"—that is, whose intent and when formed—has been considered. We now observe that the intent must be to defraud the United States "of such tax," and this takes us to the opening clause referring to "goods or commodities for or in respect whereof any tax is imposed." Within the fair meaning of this clause, and as affected by the "direct conflict" aspect of the National Prohibition Act, was there, in 1924, any "tax imposed" upon the liquor being transported, so that the carriers could be guilty of the punishable intent? The power of Congress to impose a tax upon that which it prohibits is not to be questioned. The inquiry is: Has Congress done so, by laws in force after November, 1921?

When we inquire about a tax, the first thought is: "What tax?" In some of the cases it has been said that the tax authorized by section 35, tit. 2, of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½v), answered this question; but, passing the difficulty of finding an intent to defraud the government of a tax which does not yet exist, and the doubt whether this section has any reference to a per-gallon tax, it has been authoritatively held (Lipke v. Lederer, 259 U. S. 557, 561, 42 S. Ct. 549, 66 L. Ed. 1061) that the assessment which may be made under this section is not one of a tax, but of a penalty for law violation. So it must be quite clear that the requirement of section 3450 that there shall be an intent to defraud "of a tax" cannot be satisfied by finding no tax but only a penalty. R. S. § 3296 (Comp. St. § 6038), is in the same situation. It does not provide a precedent tax out of which one may intend to defraud the government; it provides a penalty to be assessed as punishment for wrongdoing.

Apparently, previous statutes, like R. S. § 3251 (Comp. St. § 5985), were superseded by section 48 of the Act of August 27, 1894, (Comp. St. § 5986); whether the lien and personal liability clauses of 3251 would survive is here immaterial. The Act of 1894 adopts and makes applicable the existing provisions of law for the payment of taxes by the use of stamps. This act levied a tax of $1.10 on each proof gallon; we do not find that it contemplated or permitted any means of collection, or payment, save through the system of selling of tax-paid stamps by the collector. It provided for payment by the distiller before removal. This statute in turn was partially superseded by section 600(a) of the Revenue Act of 1918 (40 Stats. 1105 [Comp. St. Ann. Supp. 1919, § 5986e]). This provides that in lieu of all other internal revenue taxes "there shall be levied and collected on all distilled spirits * * * that may be hereafter produced in * * * the United States * * * a tax of $2.20 (or, if withdrawn for beverage purposes or for use in the manufacture or production of any article used or intended for use as a beverage, a tax of $6.40) on each proof gallon * * *. to be paid by the distiller or importer when withdrawn, and collected under the provisions of existing law."

When this act was passed, the manufacture of whisky for beverage purposes or its withdrawal from bond for such purposes was lawful, except as temporarily suspended by the War Prohibition Act (Comp. St. Ann. Supp. 1919, §§ 3115¹¹⁄₂f–3115¹¹⁄₂h). The evident theory was that at the time the distilled spirits were withdrawn from the distillery or bonded warehouse, they should be classified as for beverage, or for industrial, medicinal, etc., purposes, and the tax paid accordingly. It was at least difficult to apply this statute intelligently to "moonshine" whisky, which never reached the contemplated point of withdrawal or classification; but then we come to section 600 of the Revenue Act of 1921 (42 Stats. 285 [Comp. St. Ann. Supp. 1923, § 5986e]). This amended the last quoted statute by adding thereto: "Provided, that on all distilled spirits on which tax is paid at the nonbeverage rate of $2.20 per proof gallon and which are diverted to beverage purposes or for use in the manufacture or production of any article used or intended for use as a beverage, there shall be levied and collected an additional tax of $4.20 on each proof gallon, * * * to be paid by the person responsible for such diversion."

Since the National Prohibition Act then

forbade any diversion to beverage purposes or for use in an article intended for a beverage, here we have, perhaps for the first time, the clear imposition by Congress of a per-gallon tax on the liquor involved in any forbidden transaction; but here, again, it seems most difficult to make application of the provision to moonshine liquor. Indeed, the amendment of 1921 cannot refer to such liquor, since its effect is confined to spirits on which the nonbeverage tax has been paid;[2] and its apparent scope was limited to spirits which had been withdrawn for industrial or other lawful purpose and then were diverted; but even if it were otherwise applicable, we do not find in this record any charge that the persons who transported were the "persons responsible" for the diversion. In any effort to invoke this amendment of 1921, we must observe that this illicit liquor is diverted to beverage purposes the moment it is made as much as it ever is until its use as a beverage is finally accomplished; and it would hardly be thought that the ultimate consumer is the person intended to be taxed by the amendment of 1921, or that his act is "deposit or concealment" under R. S. § 3450.

Were it assumed that the distiller of moonshine wished to pay the per-gallon tax thereon—whatever the amount might be, $2.-20 or $6.40—he would have difficulty enough in doing so, though possibly the implications of R. S. § 3253 would point the way; but if the later purchaser of the same liquor wished to make this payment, would he be able to discover any way in which it could be done? If he could have done it under the old revenue laws, it would have been by the purchase of stamps and affixing them to the package, though he was not entitled to buy stamps and practically he could not have done this; but the National Prohibition Act, § 35, after providing that the act shall not relieve any one from paying any taxes imposed upon the manufacture of such liquor or the traffic in it—a provision obviously intended to retain some liability on the part of the manufacturer and trafficker but reaching no one else—proceeds: "No liquor revenue stamps or tax receipts for any illegal manufacture or sale shall be issued in advance. * * *" So far as we find, there was in the old revenue laws no way of paying any per-gallon tax except to pay it by revenue stamps "in advance" of the act which would make the liquor available for use; but now comes section 35 and prohibits the issue of any revenue stamps or tax receipts in advance.

Unless we have in some respect misapprehended the system, we cannot find that the mere transporter of moonshine is under a duty to pay a per-gallon tax, which duty would make the necessary basis for his intent to defraud; and we must regard the provision of section 35, abolishing and forbidding, as to illicit liquor, all advance payments through stamps and receipts, to be in "direct conflict" with the old system of per-gallon taxation, and hence to repeal it pro tanto.[3]

We do not see that this liquor can be thought of as possibly produced for nonbeverage purposes, and hence still subject to taxation on that theory. The system of producing nonbeverage spirits is surrounded by careful safeguards; the law in that respect is to be enforced by the specified punishment for disregarding these safeguards, not by inference drawn from any fiction that illicit liquor is to be considered, for convenient purposes, as if lawful.

[3] Another consideration tends to the same result. We pointed out in the Lewis Case such a measure of inconsistency in the two statutes in their relative effect on the same act (though not direct conflict) as supported the inference of implied repeal of the third class. The "re-enactment" made by the Willis-Campbell Act is not of all laws that may have been impliedly repealed by the National Prohibition Act, but only of "all laws in regard to the manufacture and taxation of and traffic in intoxicating liquors" and "penalties for violation of such laws." Only by the broadest construction can section 3450 be brought within this classification. It provides a penalty which within its total scope may have incidental effect upon liquor taxation; but section 3450 does not directly mention liquor taxation, and only with difficulty can it be said to be "a law in regard to" that subject.

May our conclusion that there is "direct conflict" between the old revenue per-gallon

---

[2] It might be said that since the petition charges only an intent to defraud out of the $4.20 tax, and since such tax cannot attach to liquor not withdrawn for lawful purposes, there can be no condemnation under this petition.

[3] Section 1300 of the Revenue Act of 1921 (42 Stats., 308, Comp. St. Ann. Supp. 1923, § 6371⅘b), does not seem applicable. It "extends to this act * * * stamp provisions of law," but this act imposes no possible relevant tax except the $4.20 tax of 600 (a) which refers only to $2.20 tax-paid liquor, nor do the "stamp provisions of law" seem possible of application to that tax.

system of taxation and the National Prohibition Act forbidding any advance tax stamps or receipts be said to be itself inconsistent with the Stafoff Case? We think not. That case did not involve any per-gallon system of taxation and tax payment, even by distillers. It considered only R. S. §§ 3242, 3258, 3281, and 3282 (Comp. St. §§ 5965, 5994, 6021, 6022). These sections forbade carrying on a distilling or rectifying business, except upon certain conditions precedent—paying special tax, giving bond, and registering. The court found no "direct conflict" between these sections and the National Prohibition Act. Obviously not. There is no "direct conflict" between a provision prohibiting an act unless after condition performed and a provision prohibiting it entirely. There is substantial accord. There is only that inconsistency coming from the implied permission for one to do the act if willing to perform the condition. There is in the comparison of these sections a good illustration of that mere inconsistency which was enough to work repeal under section 35 but not enough to be the "direct conflict" of the Willis-Campbell Act.

[4] Our conclusion is confirmed—indeed sufficiently supported—by a comparison of the rights of the parties under section 26 and under section 3450, as the latter is construed by the government to reach mere transportation and as it has been interpreted in the Goldsmith-Grant Case. With reference to the effect upon the same act of the one transporting, there is no difference to him between the two sections; under either he loses every right he has in the vehicle. It is otherwise with reference to the good-faith mortgagee, or title holder. Section 3450 says his rights shall be forfeited; section 26 says they shall not. Could inconsistency be more clearly "conflict," or "conflict" more surely "direct"?

The acts cannot be differentiated by imputing in one case an intent to defraud the revenue, and considering this element absent in the other case. It is the government's necessary position that the intent to defraud of the tax is inherent in the mere transportation, and so is always present.

The third question is whether there was a binding election by the government to proceed under section 26. In view of our determination upon the second question, an answer to the third becomes unnecessary.

The order of condemnation must be reversed and the case remanded for the entry of the order proper under section 26.