CADILLAC AUTOMOBILE MOTOR NO. 61–D–476 v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. July 8, 1925.)

No. 4290.

1. Internal revenue ⊜⇒46—Carrying of cocaine on the person held not to subject vehicle in which such person was riding to forfeiture.

That a person riding in an automobile was carrying an ounce of cocaine in his pocket, in a bottle not bearing a tax-paid stamp, held not to subject the automobile to forfeiture under Rev. St. § 3450 (Comp. St. § 6352), as a vehicle used for the concealment or transportation of property subject to tax, with intent to defraud the government of the tax.

2. Internal revenue ⊜⇒46 — Carrying small quantity of narcotic held not to establish intent to defraud revenue.

That a person carried in his pocket, in a bottle not bearing a tax-paid stamp, an ounce of cocaine, the tax on which, under Harrison Narcotic Act, § 1, as amended by Act Feb. 24, 1919 (Comp. St. Ann. Supp. 1919, § 6287g), was one cent, does not establish that he was concealing or transporting it with intent to defraud the government of the tax, for the purpose of subjecting the vehicle in which he was riding to forfeiture under Rév. St. § 3450 (Comp. St. § 6352).

In Error to the District Court of the United States for the Western District of Tennessee; J. W. Ross, Judge.

Libel by the United States for forfeiture of one Cadillac automobile, motor No. 61–D–476. Decree for plaintiff, and claimant brings error. Reversed and remanded, with directions.

John Galella and Thos. J. Walsh, both of Memphis, Tenn., for plaintiff in error.

W. H. Fisher, Asst. U. S. Atty., of Memphis, Tenn. (S. E. Murray, U. S. Atty., and A. A. Hornsby, Asst. U. S. Atty., both of Memphis, Tenn., on the brief), for the United States.

Before DENISON, DONAHUE, and MOORMAN, Circuit Judges.

DENISON, Circuit Judge. This was the petition of the United States to condemn one Cadillac automobile because it had been used in the removal and concealmennt of cocaine, with the intent to defraud the United States of the tax thereon, contrary to the provisions of section 3450, R. S.

The District Court ordered the condemnation. The automobile belonged to Elvira Bellomini, who appeared as claimant. Her brother, John Bellomini, was driving the car when it was seized. It was stipulated that

Elvira had not authorized its use for, and had no reason to suppose it was to be used for, carrying cocaine.

John Bellomini had been suspected of supplying narcotics to addicts. An arrangement was made with him that he would furnish some cocaine to a purchaser. In carrying out this arrangement he drove up in this automobile and was arrested; upon search he was found to be carrying in his pocket a bottle containing one ounce of cocaine, and the bottle was unstamped. This is the complete case made for condemnation. If the tax was unpaid, the amount thereof was one cent.

The questions presented are: First was the cocaine being removed or concealed, within the fair scope of those words as found in Rev. St. § 3450 (Comp. St. § 6352)? Second, if there was removal or concealment, was it with intent to defraud the United States of the narcotic tax?

[1] The case is not controlled by our recent decision in Commercial Credit Co. v. United States, filed April 6, 1925, 5 F.(2d) 1. There has been no later statute at all inconsistent with the narcotic taxing statute, and hence the questions of implied repeal and of "direct conflict," which have arisen as between section 3450 and the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et. seq.) and the Willis-Campbell Act (42 Stat. 222) do not here exist. However, in the Commercial Credit Company Case we discussed the question whether transportation, in the way incident to ordinary ownership, and by a person who had originally been under no obligation to pay the tax, was the removal or concealment contemplated by section 3450. The reasons involved indicated to us a negative answer; but we felt constrained to a contrary holding because of the holding, sub silentio, in the Goldsmith-Grant Case, 254 U. S. 505, 41 S. Ct. 189, 65 L. Ed. 376. The latter case has no such controlling application to the transportation of a narcotic. With reference respectively to liquors and to narcotics, the matters of storage in bond and removing from bond and the statutes as to taxation are vitally different. We are therefore at liberty to draw, with regard to narcotics, what we think the right inference as to the meaning of "removal" and "concealment" and free of constraint from the Goldsmith-Grant Case. In addition, the automobile which is carrying in boxes or cases a substantial quantity of liquors is "removing" them in a very direct way—if "removing" means "transporting"—but it seems to us a perversion of plain terms to say that an automobile is "removing" cocaine just because the driver has one ounce in his pocket. If the word is rightly thus used, and if we keep in mind that under the Goldsmith-Grant Case entire innocence is of no importance, it follows that a casual passenger who rides upon an automobile or a steamboat, and who has a trifle of nontax-paid narcotic in his pockets, will fatally taint the vehicle. We cannot accept this view of the statute.

[2] Nor can we find the necessary intent to defraud the United States of the tax. If, with reference to so solemn a matter as taxes, there can be a reductio ad absurdum we have it here; but, passing that, we next observe that there seems to be no evidence that the tax upon this cocaine had not been paid. The stipulation of fact is "that there was found concealed in the hip pocket of Bellomini two small bottles, one of which contained morphine and one of which contained cocaine; that the morphine bottle contained one-eighth ounce and that the other bottle contained one ounce of cocaine; that the morphine bore the original tax stamp across the label, the cocaine bearing no stamp. * * * It is further agreed that John Bellomini is neither an exporter or an importer nor a licensed dealer in narcotics, neither is he a manufacturer of same." There is nothing to show whether the bottle of cocaine was some sort of an original package, which was required to be stamped, or whether it might have been dispensed from a larger bottle which might have been properly stamped.[1] In view of the trifling amount of the tax the latter is at least as probable as the other.

We see no possibility of concluding, with the certainty that should be required in such a case, that this tax had not been paid, unless such a conclusion be made to rest upon section 1 of the Harrison Act, as amended February 24, 1919 (section 6287g, U. S. Comp. St. 1919 Supp.). It is quite clear that there can be no condemnation under section 3450 for any unpaid dealer's tax—the words "tax thereon" must refer to the tax on the article itself, like the per gallon tax upon liquors or the duty tax upon imports. Hence no tax can be here involved except the per ounce tax, which was for the first time levied by

---

[1] True, the statute requires that in such case the prescription be specified on the bottle label, but the lack of such label indicates nothing regarding tax payment.

the amendment above cited, and which directs the payment of an internal revenue tax at the rate of one cent per ounce, such tax to be paid by the "importer, manufacturer, producer, or compounder thereof," and that tax stamps therefor shall be attached so as to seal the stopper. The amendment then provides that "it shall be unlawful for any person to purchase, sell, dispense, or distribute any of the aforesaid drugs except in the original stamped package or from the original stamped package; and the absence of appropriate tax-paid stamps from any of the aforesaid drugs shall be prima facie evidence of a violation of this section by the person in whose possession same may be found." We do not see how this phrase, "guilty of a violation of this section," can be so construed as to support the inference that the per ounce tax had not been paid on this particular ounce in Bellomini's pocket, since by the terms of the statute this tax was to be paid only by the importer, manufacturer, producer, or compounder, and it is stipulated that Bellomini was not one of these. It is impossible, for the purposes of this case, to suppose that the phrase means that there is a presumption of nonpayment by the original purchaser, because it says that the possession shall be evidence of violation by Bellomini, the possessor.

Further, it is not without importance that a further paragraph of the amendment says that "all the provisions of existing internal revenue laws relating to searches, seizures and forfeitures of unstamped articles are hereby extended to and made to apply to the articles taxed under this act." This careful inclusion of existing laws for forfeiture of the article, without reference to forfeitures of vehicles used in removing the articles, is significant.[2]

Further, it is to be observed, as was pointed out in the Commercial Credit Case, that it is difficult to understand how one can intend to defraud the United States of a tax which he was under no duty to pay, and which he could not have paid if he had wanted to. Bellomini was not among the classes upon whom the duty to pay was imposed,

and it is not seen how, not being a registered dealer, he could have procured a stamp to affix to this bottle. Under the principles of the Jin Fuey Moy Case, 241 U. S. 394, 402, 36 S. Ct. 658, 60 L. Ed. 1061, Ann. Cas. 1917D, 854, with reference to section 8 (Act Dec. 17, 1914 [Comp. St. § 6287n]), it cannot have been intended to penalize Bellomini (much less an innocent third party) because he did not affix a stamp, when he was not of the class required or permitted to affix stamps.

Upon the whole case, we think it clear that the judgment should be reversed, the libel of the United States be dismissed, and the petition of the claimant be granted. The case is remanded for these purposes.

---

[2] Especially so, as when section 3450 was adopted (section 14, Act July 13, 1866 [Comp. St. § 6352]), there was no tax on these drugs —morphine, phosphorus and others being exempted by section 10, and later, when phosphorus was taxed, section 3450 was expressly made applicable (section 16, Act April 9, 1912 [Comp. St. § 6286]). See full discussion in U. S. v. Mangano (C. C. A. 8) 299 F. 492.