### UNITED STATES v. ONE CHEVROLET COACH.

No. 1820.

District Court, S. D. Texas, Houston Division. Sept. 23, 1932.

H. M. Holden, U. S. Atty., and M. S. McCorquodale, Asst. U. S. Atty., both of Houston, Tex.

Charles Reinhard and Huggins, Kayser & Liddell, all of Houston, Tex., for intervener.

KENNERLY, District Judge.

This is a libel by the government under the Tariff Act (sections 482 and 483, of title 19, USCA) against, and to forfeit, one automobile (Chevrolet coach), seized November 17, 1931, by a government narcotic agent, and by him delivered to the United States collector of customs at Houston. The car was seized while in the possession of one Meschi. He has not appeared to claim it, but General Motors Acceptance Corporation (defendant) has appeared, claiming a lien thereon. Trial by jury has been waived, and the parties have filed stipulation agreeing that they, upon the trial, shall be considered as having offered the testimony of witnesses, and other evidence, as in such stipulation [1] set forth.

From such stipulation, I find that Meschi kept, hauled, and transported in, on, and about such car, within the meaning of, and in

[1] This stipulation reads as follows: "It is stipulated by and between the parties herein that: (1) This cause be submitted to the Court on an agreed statement of the testimony; that (2) a trial by jury is waived; that (3) the anti-narcotic indictment in United States v. Dominic Meschi, Criminal 4863, a copy of which is attached hereto, shall be considered as a part of the agreed statement and is offered in evidence subject to all objections which could be made to the admissibility of the original indictment; that (4) the testimony, as stated herein, shall be considered as having been offered in evidence subject to objections which may be stated to the Court in writing for the purpose of obtaining a ruling thereon; which parties herein join in their request that the Court file its findings of fact and conclusions of law, as provided by law; that the parties herein will submit briefs on the law and any objections which may be made to the admissibility of the agreed testimony; that it is agreed that witnesses testified:

"Dominic Meschi went to the home of James Barrett, 1717 Hamilton Street, Houston, Texas, on November 17, 1931, at 10:30 o'clock in the morning. W. J. Kelly, Federal Narcotic Agent, heard Barrett and Meschi while they were talking on the back porch of Barrett's home. At that time Barrett negotiated the purchase of two ounces of heroin from Meschi, the heroin to be delivered the same day at a price of $55.00 an ounce. About noon the same day, Paul Nisbet, Federal Narcotic Agent, concealed himself in Barrett's residence at said address and Kelly hid in the garage, which consisted of two rooms. Mrs. Blanche Everest, mother of James Barrett, observed Dominic Meschi drive up to the house in a Chevrolet Coach and park in front of the driveway on the street. Kelly saw Meschi get out of the Chevrolet car with a paper sack in his hand and meet Barrett in the driveway. Barrett and Meschi then went into a part of the house for a moment out of Kelly's sight and then came out of the house and walked back to the garage building. They went into a small room, Meschi with the paper sack in his hand. Meschi advised Barrett he had the heroin and Barrett started counting out $110.00 in marked bills furnished him by the narcotic agents. Agent Kelly interrupted Barrett and Meschi at this point and attempted to arrest Meschi. A fight ensued when Agent Nisbet appeared to assist Kelly. Meschi was subdued after several altercations and fights covering a period of about thirty minutes. Barrett recovered the paper sack which Meschi had dropped in the small room in the garage and delivered it to the Narcotic Agents. It was found to contain two ounces of heroin, a derivative of opium. The bag was picked up about one hundred feet from the Chevrolet Meschi drove up in, it being the car libelled herein.

"On March 7, 1932, Dominic Meschi, who drove the Chevrolet Coach to the premises, entered a plea of guilty to receiving, concealing, transporting and facilitating the transportation of two ounces of heroin, knowing the same to have been imported into the United States contrary to law and without the payment of duty thereon; that said plea of guilty was with reference to the same transaction which resulted in his arrest at the home of James Barrett and the subsequent seizure of the Chevrolet Sedan libelled herein; that he also pleaded guilty to unlawful purchase and sale of the same heroin, without payment of the required tax.

"That after Meschi's arrest, the Chevrolet Sedan, libelled herein, was seized while parked in front of the Barrett home by the Federal Narcotic Agents and delivered to the Collector of Customs, Houston, Texas, for forfeiture under customs laws.

"That the two ounces of Heroin then and there seized had been tested by competent experts and found to be heroin, a derivative of opium.

"That the heroin was contained in two cardboard boxes, the cardboard of highly glazed surface with an intricate design printed thereon; that the containers of the heroin bore no United States revenue stamps of any sort thereon; that the design on the boxes, the wrapping of the box and the words, design and devices printed thereon were identified by experienced narcotic agents as a type of wrapping and container well known to them from the experience of previous seizures as being those used for narcotics of foreign, German, manufacture and origin; that the importation of heroin into the United States is prohibited by law and none has ever been known by the United States Narcotic Agents to have been manufactured legitimately in the United States and packed in boxes and containers such as those seized on the occasion referred to; that the manufacture of heroin in the United States from other derivatives of opium is possible.

"That a qualified chemist has tested the drug for intervener herein and finds it, in his opinion, to be a poor grade of heroin, and said chemist, from fifteen years experience, is unable to determine the origin of the heroin after examination and research for that purpose; that in his opinion conclusions as to origin can not be drawn and inference is of no value.

"That the General Motors Acceptance Corporation, intervener herein, is the innocent holder in good faith of a mortgage on said Chevrolet Automobile; that intervener herein is without knowledge of or participation in any violation of law by Dominic Meschi despite the fact that Meschi may have been in trouble before. That intervener has made bond in the sum of Two Hundred Fifty Dollars ($250.00) as required by law, conditioned to pay, in the event of forfeiture of said car, the expenses of proceedings to obtain such condemnation."

the manner set forth in, the Tariff Act, to the home of one Barrett·in Houston, Tex., two ounces of heroin (a derivative of opium), which was manufactured outside of the United States, the importation of which into the United States was then, and is now, prohibited by law, which heroin had been recently unlawfully introduced, imported, and smuggled into the United States. Such heroin was seized immediately after being so transported, and taken from such car by Meschi. Defendant is the owner and holder in good faith of a valid lien on such car, without any knowledge of or participation in such transportation, etc., of such heroin. It has filed its cost bond in the sum of $250 with the Fidelity & Casualty Company as surety.

■ 1. Citing United States v. One Cadillac (D. C.) 55 F.(2d) 413, United States v. One Gardner (D. C.) 35 F.(2d) 777, and United States v. One Oakland (D. C.) 9 F.(2d) 635, the government insists that these facts entitle it to forfeit the car under the Tariff Act. This, defendant combats. Although certain acts of Congress, dealing with narcotics (section 708, title 26, USCA, and section 173, title 21, USCA), make no provision for the forfeiture of a car in which narcotics are so found or transported, and although such car may not be forfeited under the internal revenue act (U. S. v. One Studebaker (D. C.) 31 F.(2d) 488; U. S. v. One Victoria Nash (D. C.) 31 F.(2d) 490; U. S. v. One Pontiac (D. C.) 25 F.(2d) 755; Cadillac Auto Motor v. U. S. (C. C. A.) 7 F.(2d) 102; U. S. v. Mangano (C. C. A.) 299 F. 492, 496; U. S. v. One Studebaker (D. C.) 298 F. 191; U. S. v. One Kissel Touring Automobile (D. C.) 289 F. 120, affirmed (C. C. A.) 296 F. 688; U. S. v. One Ford Truck (D. C.) 286 F. 204), I think it unanswerable that under the reasoning in General Motors Acceptance Corporation v. U. S., 286 U. S. 49, 52 S. Ct. 468, 472, 76 L. Ed. 971,[2] the government is entitled to proceed, and to forfeit the car, under the Tariff Act.

■ 2. But defendant insists that, even if this be true, the facts in this case do not show that the narcotics which were in, on, and about, and were transported in, the car, were there in violation of the Tariff Act. The contention is that there is shown only a peddling of narcotics by Meschi, the owner of the car. With this contention I cannot agree. The government has made out a prima facie case under the Tariff Act, and, as was said in United States v. Commercial Credit Company, 286 U. S. 63, 52 S. Ct. 467, 468, 76 L. Ed. 978, "the circumstantial evidence justifies a finding that the cars, wherever laden, were implements or links in a continuous process of carriage" in the unlawful importation of the narcotics into the United States. This is clearer when considered in connection with the burden of proof which defendant has under the law (section 1615, title 19, USCA, Act June 17, 1930, c. 497, title 4, § 615).

■ 3. Defendant also complains of the search of the car. It has been held by this court that defendant may not so complain (United States v. One Fargo Truck (D. C.) 46 F.(2d) 171, 172), but see Boyd v. United States, 116 U. S. 616, 6 S. Ct. 524, 29 L. Ed. 747. However that may be, such complaint is without merit. The stipulation shows that the car, driven by Meschi, drew up in front of the home of Barrett, and Meschi alighted therefrom, carrying a paper sack, which, after Meschi's arrest, was found to contain the heroin. It was after the arrest and the finding of the narcotics that the narcotic agents searched and seized the car. There was probable cause for the search and seizure. Carroll v. United States, 267 U. S. 154, 45 S. Ct. 280, 69 L. Ed. 553, 39 A. L. R. 790. Further, the search and seizure may be upheld as incident to the arrest of Meschi. Agnello v. United States, 269 U. S. 20, 46 S. Ct. 4, 70 L. Ed. 147, 51 A. L. R. 409.

■ 4. It is well settled that the innocence and good faith of a lienholder, such as is defendant, does not protect against a forfeiture

---

[2] General Motors Corporation v. United States is a case in which the question certified to the Supreme Court was whether section 26 of title 2 of the National Prohibition Act (27 USCA § 40) repeals by implication, and renders inoperative in liquor importation and transportation cases, the forfeiture provisions of the Customs Law in so far as offending vehicles are concerned. Answering the question in the negative, the Supreme Court uses this language:
"Repeals by implication are not favored. (Henderson's Tobacco, 11 Wall. 652, 20 L. Ed. 235; United States v. Tynen, 11 Wall. 88, 92, 20 L. Ed. 153), and least of all where inveterate usage forbids the implication. Indeed, the breach, if we once allow it, will hardly be confined within the ramparts of the acts that regulate the duties upon imports. If a forfeiture under the customs laws is forbidden where there has been an unlawful importation of intoxicating liquors, we shall have difficulty in upholding a forfeiture where there has been a violation of the navigation laws or other cognate statutes. Already the net of these complexities has entangled the decisions. Cf. The Ruth Mildred, 286 U. S. 67, 52 S. Ct. 473, 76 L. Ed. 981, and General Import & Export Co. v. United States, 286 U. S. 70, 52 S. Ct. 474, 76 L. Ed. 983. * * * Courts accepting the conclusion that the customs forfeitures are ended in respect of intoxicating liquors have been unable to extricate themselves from the conclusion that forfeitures under the navigation acts have fallen at the same time. A halt must be called before the tangle is so intricate that it can no longer be unraveled."

under the Tariff Act. General Motors v. United States, supra.

5. The indictment against Meschi, which charges him in one count thereof with violation of the Tariff Act, was offered by the government, together with evidence of his plea of guilty thereunder. Defendant objects to the plea of guilty for the reasons set forth in its objections to evidence, filed in connection with the stipulation, as follows: "Claimant had no chance to cross-examine Meschi; the criminal case is a proceeding in itself separate and distinct from this libel; the plea of guilty is immaterial, irrelevant, prejudicial and incompetent; further, said plea is hearsay, no predicate has been laid for its introduction and it is not shown that Claimant was a party to the criminal action or had notice of it; and neither is it shown that the plea was for any other reason than a compromise of his predicament."

This question was certified to the Supreme Court in General Motors Corporation v. United States, supra, and not answered. The cases referred to in the briefs of the parties hereto are The Rosalie M, 12 F.(2d) 970 (5th Cir.); U. S. v. One Fargo Truck, 46 F. (2d) 171 (D. C. S. D. Tex.) affirmed General Motors Acceptance Corp. v. U. S., 286 U. S. 49, 52 S. Ct. 468, 76 L. Ed. 971; U. S. v. One Ford (D. C.) 21 F.(2d) 628; U. S. v. One Oakland (D. C.) 9 F.(2d) 635; Commercial Credit Corporation v. U. S., 58 F.(2d) 195 (2d Cir.); U. S. v. One Chevrolet (D. C.) 21 F.(2d) 477, affirmed U. S. v. General Motors Acceptance Corp. (C. C. A.) 25 F.(2d) 238; U. S. v. One Packard (D. C.) 14 F. (2d) 874; U. S. v. Packard Sedan (D. C.) 23 F.(2d) 865.

I do not think such plea of guilty is admissible here, but in deference to the opinion in The Rosalie M. Case (C. C. A.) 12 F.(2d) 970, I have admitted it in evidence, but ignored it in reaching a conclusion. I think it is without probative force.

From what has been said, it follows that the government is entitled to judgment forfeiting the car.