## UNITED STATES v. ONE STUDEBAKER AUTOMOBILE (MOSEHART & KELLER AUTOMOBILE CO., Intervener).

### No. 1821.

District Court, S. D. Texas, Houston Division.

Feb. 13, 1933.

H. M. Holden, U. S. Atty., and M. S. McCorquodale, Asst. U. S. Atty., both of Houston, Tex.

W. P. Hamblen and Phil D. Woodruff, both of Houston, Tex., for intervener.

KENNERLY, District Judge.

This is a libel by the government under the Customs Act (sections 482 and 483, title 19, USCA, and section 1581, title 19, US CA, and other provisions of the Tariff Act of 1930 [19 USCA § 1001 et seq.]) against and to forfeit one automobile (Studebaker) seized January 20, 1932, by a government narcotic agent, and by him delivered to the United States Collector of Customs at Houston. The car was seized while in the pos-

session of one Meschi. He has not appeared to claim it, but the Mosehart & Keller Automobile Company (intervener) has appeared, claiming a lien thereon. Trial by jury has been waived, and the parties have filed a stipulation as to the main facts, leaving it necessary, however, for the court to find certain facts from the stipulation.

On the morning of January 20, 1932, one Flowers, a woman narcotic addict, telephoned Meschi, who was then at 6503 Avenue E, Houston, and arranged to purchase from him an ounce of morphine. At that time, Meschi was engaged in the illicit purchase, peddling, and sale of narcotics, and had morphine stored and secreted at the Avenue E address. Meschi purchased the narcotics so peddled and sold from unknown persons in the city of Houston.

Upon receiving the telephone call, Meschi placed an ounce of morphine in the car in question, and, transporting the morphine in the car, drove to 3456 Hadley avenue, Houston, parking on the street about sixty feet from that address. Meschi then left the car, taking with him the morphine, was met by Flowers, and they walked together to a garage in the rear of the Hadley street address, and there Meschi delivered to her the ounce of morphine, for which she paid him $100 in marked money previously furnished her by the narcotic officers. All this was observed by the narcotic officers, and they forthwith arrested Meschi, and took from his person the $100 marked money. The delivery of the morphine took place about 120 feet from the car.

Immediately upon the delivery of the morphine and the arrest of Meschi, the officers seized the car, and thereafter turned it over to the Collector of Customs, as stated. It is agreed by the parties in the stipulation that such car was not used to transport narcotics from any other place to the city of Houston; the inference from the agreement being that it was used only in transportation connected with the peddling and sale by Meschi of narcotics purchased by him in Houston, as stated, and kept and stored by him.

I find from the agreement that the morphine transported by Meschi in the manner stated, and sold to Flowers, was of foreign manufacture, and not manufactured in the United States, and that it was unlawfully imported into the United States in violation of the tariff or customs laws, and no duty was paid thereon to the United States, and it bore no revenue or customs stamps of the United States. I find this was known to Me-

610

schi. There is no evidence by whom, or at what point, it was unlawfully imported into the United States, except that it was not imported by Meschi, and not transported in the car from the point where it was unlawfully imported into the United States (unless it was so unlawfully imported into the United States at Houston); the agreement being that Meschi purchased it from unknown persons in Houston.

Intervener has a valid lien against the car to secure an indebtedness of Meschi to it of $215, plus interest, and intervener is entirely innocent of, and had no part in, nor knowledge of, the use that Meschi was making of the car.

It is stipulated that Meschi was indicted in this court, and has entered a plea of guilty under count 1 of such indictment, charging unlawful concealment and facilitating the transportation of the ounce of morphine mentioned above, knowing same to have been unlawfully imported into the United States, etc. That he has also entered a plea of guilty to count 2 of such indictment, charging him with being a dealer in morphine without the payment of the tax required to be paid by such dealers. Intervener, however, insists that the indictment and Meschi's plea of guilty thereto are not admissible in evidence in this case.

■ 1. Intervener contends that such car may not be forfeited under the customs laws or Tariff Act. This contention cannot be upheld. See General Motors Acceptance Corporation v. United States, 286 U. S. 49, 52 S. Ct. 468, 76 L. Ed. 971; United States v. Commercial Credit Company, 286 U. S. 63, 52 S. Ct. 467, 468, 76 L. Ed. 978; United States v. One Chevrolet Coach (D. C.) 1 F. Supp. 310.

■ 2. Intervener also contends that since the government has not shown that the transportation of the contraband merchandise in the car was from the place where it was unlawfully imported into the United States, but from a place where it was concealed after such unlawful importation, the right to forfeit the car does not exist. In other words, intervener claims that the car was only being used by Meschi in peddling narcotics from the Avenue E address where he had them concealed or stored, and that this does not give the government the right to forfeit the car. A determination of this question calls for an examination of the statutes under which it is sought to forfeit the car.

The Tariff Act of 1930 amended Tariff Act 1922, § 581, section 481, title 19, USCA

and it, as so amended, is carried as section 1581, title 19, USCA. Sections 482 and 483, title 19, USCA, remain unaffected by the Tariff Act of 1930.[1] These three sections relate to searches, seizures, and forfeitures of vessels, vehicles, etc. The evidence as to the transportation of the morphine by Meschi was not obtained by the search of the car,

[1] Sections 482, 483, and 1581, title 19, USCA, read as follows:

"§ 482. Search of vehicles and persons. Any of the officers or persons authorized to board or search vessels may stop, search, and examine, as well without as within their respective districts, any vehicle, beast, or person, on which or whom he or they shall suspect there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law, whether by the person in possession or charge, or by, in, or upon such vehicle or beast, or otherwise, and to search any trunk or envelope, wherever found, in which he may have a reasonable cause to suspect there is merchandise which was imported contrary to law; and if any such officer or other person so authorized shall find any merchandise on or about any such vehicle, beast, or person, or in any such trunk or envelope, which he shall have reasonable cause to believe is subject to duty, or to have been unlawfully introduced into the United States, whether by the person in possession or charge, or by, in, or upon such vehicle, beast, or otherwise, he shall seize and secure the same for trial."

"§ 483. Forfeitures. Every such vehicle and beast, or either, together with teams or other motive power used in conveying, drawing, or propelling such vehicle or merchandise, and all other appurtenances, including trunks, envelopes, covers, and all means of concealment, and all the equipage, trappings, and other appurtenances of such beast, team, or vehicle, shall be subject to seizure and forfeiture. If any person who may be driving or conducting, or in charge of any such carriage or vehicle or beast, or any person traveling, shall willfully refuse to stop and allow search and examination to be made as herein provided, when required so to do by any authorized person, he shall be punishable by a fine of not more than $1,000, nor less than $50."

"§ 1581. Boarding vessels. Officers of the customs or of the Coast Guard, and agents or other persons authorized by the Secretary of the Treasury, or appointed for that purpose in writing by a collector may at any time go on board of any vessel or vehicle at any place in the United States or within four leagues of the coast of the United States, without as well as within their respective districts, to examine the manifest and to inspect, search, and examine the vessel or vehicle, and every part thereof, and any person, trunk, or package on board, and to this end to hail and stop such vessel or vehicle, if under way, and use all necessary force to compel compliance, and if it shall appear that any breach or violation of the laws of the United States has been committed, whereby or in consequence of which such vessel or vehicle, or the merchandise, or any part thereof, on board of or imported by such vessel or vehicle is liable to forfeiture, it shall be the duty of such officer to make seizure of the same, and to arrest, or, in case of escape or attempted escape, to pursue and arrest any person engaged in such breach or violation.

"Officers of the Department of Commerce and other persons authorized by such department may go on board of any vessel at any place in the United States or within four leagues of the coast of the United States and hail, stop, and board such vessels in the enforcement of the navigation laws and arrest or, in case of escape or attempted escape, pursue and arrest any person engaged in the breach or violation of the navigation laws."

and no question of search is presented. There is no complaint as to the seizure. The question is as to the right of forfeiture under these sections. Section 482, after providing for the search of vehicles, boats, persons, trunks, envelopes, etc., says (italics mine): "and if any such officer or other person so authorized shall find any merchandise *on or about any such vehicle,* beast, or person, or in any such trunk or envelope, which he shall have reasonable cause to believe is subject to duty, or to have been unlawfully introduced into the United States, *whether by the person in possession or charge, or by, in, or upon such vehicle,* beast, *or otherwise,* he shall seize and secure the same for trial."

The word "otherwise" seems to authorize and require seizure, no matter by whom, or in what manner, or in what vehicle, the contraband merchandise was unlawfully imported into the United States.

This is followed by section 483, which refers back to section 482, and declares that every *such* vehicle, etc., shall be subject to seizure and forfeiture, etc. There is nothing which limits the forfeiture to vehicles which are transporting the contraband merchandise from the place of unlawful importation.

But intervener says that its position is upheld by the Supreme Court in United States v. Commercial Credit Company, supra, where it is held that the cars there under consideration were "implements or links in a continuous process of carriage" from a point or points without the United States into the United States. My view is, however, that the Supreme Court was there discussing the particular facts of that case, and that there was no intention to hold, and it is not there held, that vehicles may not be forfeited under the statutes under discussion under a different state of facts. And that "continuous process of carriage" does not mean that the contraband merchandise must be moving continuously in one vehicle, and does not mean that it may not be stored or concealed for a time or times and transported for a time or times. It means carriage one time or many times, by one vehicle or many vehicles, from the point or place of unlawful entry until the merchandise is consumed, destroyed, or the duty paid. If the merchandise is, as here found to be, in fact unlawfully imported, the government, to secure a forfeiture of the vehicle in which it is being transported, is not required to show its prior periods or places of concealment or storage, and the prior times and places of its transportation. Until the duty is paid, there is no place where

it may be stored or concealed and "come to rest," and thereafter be treated as merchandise lawfully imported. Neither will one or more acts of transportation rob it of its contraband character. It continues contraband so long as it exists and the duty is not paid, and each act of transportation by a person having knowledge, as did Meschi, of its contraband character, renders the vehicle in which it is transported subject to forfeiture.

3. Intervener also claims protection as an innocent lienholder. This is settled against intervener by substantially all the cases.

4. In reaching a conclusion on the facts, I have not considered the indictment and plea of guilty by Meschi. I regard them as having here no probative force.

From what has been said, it follows that the government is entitled to judgment.

