17-2405-cr
*United States v. Alston*

# United States Court of Appeals
## FOR THE SECOND CIRCUIT

August Term, 2017

(Argued: June 6, 2018      Decided: August 9, 2018)

Docket No. 17-2405-cr

UNITED STATES OF AMERICA,

*Appellee,*

–v.–

MERLIN ALSTON,

*Defendant-Appellant.*

B e f o r e :

CABRANES, LYNCH, and CARNEY, *Circuit Judges.*

Defendant-appellant Merlin Alston, a former New York City police officer, appeals his convictions, following a jury trial, for (1) conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine and a quantity of MDMA, in violation of 21 U.S.C. §§ 841(b)(1)(A), (b)(1)(C), and 846, and (2) possessing a firearm in furtherance of that drug trafficking offense, in violation of 18 U.S.C. § 924(c). Alston argues, as to the drug conspiracy count, that the evidence presented at trial was insufficient to sustain his conviction. As to the firearms possession count, Alston asserts that he cannot be convicted under section 924(c) for possessing his service weapon in furtherance of a drug trafficking offense, because he was a police officer entitled or even

obligated to carry that weapon at the time of the alleged offense conduct. He contends further that the government's evidence regarding his possession of a firearm other than his service weapon was insufficient to sustain a conviction under section 924(c). Alston argues additionally that the District Court erred in denying his motion for a new trial, which he based on two grounds: discovery of a cooperating witness's allegedly false testimony, and newly discovered evidence about that cooperating witness's post-trial misconduct in prison. Finally, Alston asserts that the District Court erred procedurally in calculating his Guidelines range by refusing to reduce his offense level to account for his minor role and by imposing enhancements for obstruction of justice and abuse of his position of trust. We reject each of these challenges.

AFFIRMED.

---

THOMAS MCKAY, Assistant United States Attorney (Jared Lenow and Karl Metzner, Assistant United States Attorneys, *on the brief*), *for* Geoffrey S. Berman, United States Attorney for the Southern District of New York, New York, NY, *for the United States of America*.

ROGER BENNET ADLER, Roger Bennet Adler, P.C., New York, NY, *for Merlin Alston*.

---

SUSAN L. CARNEY, *Circuit Judge*:

Defendant-appellant Merlin Alston, a former New York City police officer, appeals his 2016 convictions, following a jury trial, in the United States District Court for the Southern District of New York (McMahon, *C.J.*). Alston was found guilty of (1) conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine and a quantity of the controlled substance MDMA, in violation of 21 U.S.C. §§ 841(b)(1)(A), (b)(1)(C), and 846, and (2) possessing a firearm in furtherance of that

drug trafficking offense, in violation of 18 U.S.C. § 924(c). He also appeals his sentence of 240 months' imprisonment.

Alston asserts several challenges to his convictions and his sentence. He argues that the evidence at trial was insufficient to sustain his conviction on the drug conspiracy count. Alston also asserts that he cannot be convicted under 18 U.S.C. § 924(c) for possessing his service weapon in furtherance of a drug trafficking offense, because he was a police officer at the time of the alleged offense conduct and was entitled and even obligated to carry that weapon. He contends that the government's evidence regarding his possession of a firearm other than his service weapon was insufficient to sustain a conviction under section 924(c). Alston further maintains that the District Court erred in denying his motion for a new trial based on a cooperating witness's allegedly false testimony and on newly discovered evidence about that cooperating witness's post-trial misconduct in prison. Finally, Alston asserts that the District Court erred procedurally in calculating his Guidelines range by refusing to reduce his offense level to account for his minor role and by imposing enhancements for obstruction of justice and abuse of a position of trust. For the reasons set forth below, we reject each of these challenges.[1]

---

[1] We also deny Alston's eleventh-hour motion to "remand" his appeal. *See United States v. Alston*, No. 17-2504-cr, Dkt. No. 66 (2d Cir.). Alston raises arguments in his motion similar to those that he raises in his briefs, and—for the reasons stated below—we find those arguments unpersuasive. To the extent that he argues that we should remand to allow the District Court to reconsider his motion in light of new caselaw, we may consider such developments on appeal. *See* Fed. R. App. P. 28(j). To the extent that he argues that new information contained in press accounts further supports his claims, that information is outside the record and cannot be

3

## BACKGROUND

Alston worked as a New York City police officer from 2006 until his arrest in July 2015. A few years into his law enforcement career, however, he began serving as an armed driver for his childhood friend, Gabriel Reyes, who sold marijuana, cocaine, and MDMA. Alston knew that Reyes was dealing drugs, but he never reported Reyes to authorities or encouraged Reyes to stop. To the contrary, Alston helped Reyes avoid intervention by law enforcement. Meanwhile, Alston benefited from Reyes's lavish lifestyle, borrowing money, jewelry, and luxury cars from Reyes and spending evenings with him at expensive nightclubs, all funded by profits from Reyes's illegal drug transactions.

On October 31, 2016, a jury convicted Alston of two crimes arising out of the aid he provided to Reyes: (1) conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine and a quantity of MDMA, in violation of 21 U.S.C. §§ 841(b)(1)(A), (b)(1)(C), and 846, and (2) possessing a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c). He was eventually sentenced to 20 years' imprisonment. He now challenges both his convictions and sentence.

"As we must when evaluating an appeal following a conviction by a jury, we recite the facts in the light most favorable to the government, and as the jury was entitled to find them in its deliberations." *United States v. Tang Yuk*, 885 F.3d 57, 65 (2d

---

considered by us on appeal. At this juncture, if Alston has admissible evidence of the claimed misconduct, it should be presented in a petition pursuant to 28 U.S.C. § 2255.

4

Cir. 2018). Much of the relevant testimony at trial was provided by Reyes, who began to cooperate with law enforcement after Reyes's own arrest in July 2014.

## I.    Alston helps Reyes distribute drugs

Merlin Alston and Gabriel Reyes's friendship began when the two were high school classmates in the Bronx, and they remained close into adulthood. After high school, Alston pursued a career in law enforcement, graduating from the police academy in 2006 and then working as an officer in the New York City Police Department. Reyes, meanwhile, took a distinctly different path: in 2008, he began selling drugs, starting with marijuana, and later moving on to cocaine and MDMA.

From 2009 through 2014, Alston and Reyes saw each other frequently, despite their conflicting occupations. Although Alston knew that Reyes sold marijuana, he never challenged the practice or threatened to arrest Reyes. Nor did he object when Reyes moved from selling marijuana to cocaine or even when, in his presence, Reyes packaged cocaine for sale. Alston and Reyes did not use cocaine, but they did occasionally use MDMA.

In 2009 or 2010, Alston's involvement in Reyes's illegal drug activity changed from passive acquiescence to active assistance. While the two were "hanging out" one day, Reyes had to leave to make a drug delivery. Tr. 97.[2] Alston offered to drive Reyes to the encounter, commenting that it would be "safer" if he drove. *Id.* Later, Alston explained to Reyes that it was in his view safer for him (Alston) to drive because Alston

---

[2] Citations to "Tr." refer to the trial transcript, relevant portions of which are available at *United States v. Alston*, No. 15-cr-435, Dkt. Nos. 90, 94, and 96 (S.D.N.Y.).

5

faced a lower risk from other law enforcement officers; he said it would be "a lot better" for him rather than Reyes to be pulled over on the road. Tr. 109.

From that first drug delivery together until some time in 2014, Alston drove Reyes to or from approximately 30 drug transactions. The vast majority of those transactions involved cocaine, and Reyes estimated that Alston helped him deliver approximately 40 kilograms of cocaine in total over this period.

Alston knew how to access the secret compartments in Reyes's cars where Reyes had hidden guns and drugs. Although Alston "never got his hands dirty with the cocaine," Tr. 105, he sealed and carried bags of cocaine for Reyes. If he was present when Reyes had to travel to a drug delivery or pickup, Alston usually drove Reyes. While the transaction was being conducted, Alston would stay in the car, and he never drove to drug transactions on his own, without Reyes present. On several occasions, however, Alston asked Reyes about picking up or delivering the drugs on his own, and at one point he also raised with Reyes, unsuccessfully, the possibility of procuring a kilogram of cocaine for Reyes. In addition, to avoid detection, Alston changed his phone number "a lot," and when near his family, he did not socialize with Reyes or other drug dealers. Tr. 181.

Alston benefited from Reyes's generosity toward friends and associates. For example, Reyes frequently paid for Alston to spend evenings with him and mutual friends at expensive nightclubs, sometimes two or three nights per week, and Reyes subsidized their vacations together in Atlantic City and Miami. Reyes also loaned Alston luxury vehicles and jewelry. Alston also occasionally reported experiencing

financial difficulties, and when he did so, Reyes loaned him thousands of dollars, debts that Alston did not repay in full.

## II.     Alston's assistance benefits Reyes

Reyes felt safer, he said, when Alston drove him to or from drug deals than when he drove himself. Alston's position as a police officer greatly reduced the risk that other law enforcement officers posed to Reyes, he thought. For example, Reyes testified that he and Alston were once traveling by car, carrying weapons, and were pulled over by an NYPD officer. Alston "showed [his] badge," and the two were permitted to leave the stop without incident. Tr. 125. And, although Reyes generally did not sell drugs in the 46th Precinct, in the Bronx, where Alston worked, on at least one occasion Alston tipped off Jeff Vargas, Reyes's friend and fellow drug dealer, who did operate in that precinct, about law enforcement activity there that might put Vargas at risk.

Even when Alston was not driving Reyes to his drug transactions, Reyes benefited from their association. Alston gave Reyes a Police Benevolent Association ("PBA") card, for example, which Reyes displayed to be released from traffic stops (including, on one occasion, when he was transporting cocaine in his car). And, on another occasion, Reyes called Alston during a traffic stop, seeking Alston's help because he was in possession of cocaine that was not hidden in a secret compartment. Alston, who was on duty, "rushed over" to the stop in a police car and spoke to the officer in charge. Tr. 126. Reyes was able to leave the stop without being searched. He sold the cocaine that he had been transporting.

Alston did more than run interference between Reyes and law enforcement, however. When he drove Reyes to or from a drug transaction, Alston was "usually"

armed with his service weapon, Tr. 118, and Reyes understood that Alston was prepared to protect him from violence if necessary. Reyes's concern that he might be the target of violence was justified: Reyes and another drug dealer had once been involved in a shootout in which someone was injured. Reyes testified that he believed that his dispute with the other dealer had escalated to physical violence *because* Alston was not present; during an earlier encounter with the same dealer, when Alston was present, no violence had occurred. As Reyes explained it, "They knew who Merlin was . . . [and] they told everybody: Yo, we can't do that. We know who this is, and stuff." Tr. 230.

In 2014, in a nightclub, Reyes had a disagreement with another drug dealer, BX Hova. The dispute was not initially drug-related: BX Hova was displeased that, at the club, Reyes was talking to a particular woman. But because the dispute was "bad for business," Tr. 233, Vargas, who supplied drugs to both Reyes and BX Hova, arranged for Reyes and the other dealer to meet face-to-face to resolve it. Reyes was concerned that the dealer would "jump[]" him at the meeting and so arranged for Alston to accompany him. Tr. 236. Alston borrowed a shotgun from Reyes for the meeting. While Reyes and BX Hova met, Alston stayed nearby in his car, with the shotgun at hand in a duffel bag. In the end, Alston did not exit his car during the encounter, and the meeting ended without violence.

**III.    The District Court proceedings**

Alston was arrested on July 14, 2015. He was charged with (1) conspiracy to possess and distribute five kilograms or more of cocaine, as well as some amounts of heroin and MDMA, in violation of 21 U.S.C. §§ 841(b)(1)(A), (b)(1)(C), and 846, and (2) possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C.

8

§ 924(c). On October 31, 2016, following a two-week jury trial, Alston was convicted of both counts. As to the drug count, the jury found that the conspiracy of which he was part extended to possession and distribution of cocaine and MDMA, but not to heroin.[3]

In the opening months of 2017, Alston (now appearing through new counsel) moved unsuccessfully for a judgment of acquittal or, in the alternative, for a new trial. Alston asserted, in part, that the government violated his due process rights by knowingly allowing Reyes to testify falsely about Reyes's "leas[ing]" of a Bronx car wash operation and that the evidence at trial was legally and factually insufficient to convict him of both the drug conspiracy and firearms counts. Appellant's App. (App't A.) 534. Then, on July 25 of that year—one day before sentencing—the government submitted a brief letter informing the District Court that the prosecutors had learned that "in early 2017, well after the defendant's trial," Reyes (then imprisoned) had possessed contraband in the form of cigarettes and marijuana, and that the possession was as part of a "store" that Reyes ran for other inmates. *Id.* at 559. At sentencing the following day, Alston's attorney requested additional information about Reyes's misconduct, arguing that the information was significant because Reyes's credibility was crucial to the government's case. The District Court denied that request on the ground that Reyes's credibility was not at issue during the upcoming sentencing.

---

[3] We note that, although the jury convicted Alston of conspiracy to possess and distribute an undefined quantity of MDMA—a violation of 21 U.S.C. § 841(b)(1)(C)—only conspiracy to violate 21 U.S.C. § 841(b)(1)(A), which relates to the charged five kilograms or more of cocaine, appears on the judgment later entered by the District Court.

9

During the sentencing itself, the District Court found Alston's Guidelines range to be 151 to 188 months' imprisonment on Count One (the drug distribution count), plus a mandatory consecutive term of 60 months' imprisonment on Count Two (the firearm count). In calculating this range, the District Court applied a two-level enhancement for obstruction of justice, and a two-level enhancement for abuse of a position of trust, both over Alston's objection. The court further rejected Alston's request for the two-level reduction applicable to a defendant who played a "minor role." The District Court sentenced Alston to a total of 240 months' imprisonment: 180 months on Count One and 60 months on Count Two, to run consecutively.

After sentencing, Alston again asked the District Court to order discovery regarding Reyes's jailhouse misconduct. In support, he argued that Reyes's credibility during trial had been bolstered by the existence of his plea agreement, which included a promise not to commit any additional crimes, and, since that promise had apparently been broken but the breach undisclosed, Reyes's testimony had received undeserved weight. The District Court again denied the request.

Alston now appeals his convictions and his sentence.

## DISCUSSION

Alston argues that his convictions should be vacated for several reasons: the evidence at trial was insufficient to convict him of conspiring to distribute five kilograms or more of cocaine; he has no criminal liability under 18 U.S.C. § 924(c) for possessing his service weapon, because he was a police officer obligated to carry his weapon at the time of the alleged offense; and the evidence regarding his possession of

10

another firearm was insufficient to sustain that conviction. He also argues that the District Court erred in denying his motion for a new trial based on Reyes's allegedly false testimony and on the newly discovered evidence about Reyes's misconduct in prison. Finally, Alston argues that the District Court erred in calculating his Guidelines range. For the reasons set forth below, we are not persuaded.

**I.      Rule 29 motion**

Alston first argues that the evidence at trial was insufficient to prove his guilt on either count of conviction.

A defendant challenging the sufficiency of the evidence against him under Federal Rule of Criminal Procedure 29 after conviction by a jury "bears a heavy burden." *United States v. Aguiar*, 737 F.3d 251, 264 (2d Cir. 2013). "On such a challenge, we view the evidence in the light most favorable to the government, drawing all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility." *Id.* (internal quotation marks omitted). We review a denial of a Rule 29 motion de novo, but will uphold the jury's verdict if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Coplan*, 703 F.3d 46, 62 (2d Cir. 2012) (internal quotation marks and emphasis omitted).

A.      Section 841(b)(1)(A) conviction: cocaine distribution conspiracy

Alston challenges the sufficiency of the evidence against him on his conviction for conspiracy to possess and distribute five kilograms or more of cocaine. He contends primarily that (1) the evidence adduced at trial was insufficient to establish that he

knowingly participated in a conspiracy to distribute cocaine at all, and (2) the evidence was also insufficient to show that he knew the conspiracy involved five or more kilograms of cocaine. The trial record starkly rebuts both contentions.

"To prove conspiracy, the government must show that the defendant agreed with another to commit the offense; that he 'knowingly' engaged in the conspiracy with the 'specific intent to commit the offenses that were the objects of the conspiracy'; and that an overt act in furtherance of the conspiracy was committed." *United States v. Monaco*, 194 F.3d 381, 386 (2d Cir. 1999) (quoting *United States v. Salameh*, 152 F.3d 88, 145–46 (2d Cir. 1998)). We briefly examine key evidence supporting these elements.

Reyes testified at trial that Alston drove him to or from illegal drug transactions approximately 30 times from 2010 through mid-2014. Most of those transactions involved cocaine, and Alston saw Reyes handle cocaine in quantity on many of these occasions. Alston knew that the purpose of these trips was for Reyes to conduct drug transactions, Reyes said, and he nonetheless offered his assistance: he told Reyes that, because he was a police officer, it would be better for him (that is, Alston) to be pulled over than Reyes. Alston stashed drugs or guns—including his service weapon—in secret compartments that had been installed in Reyes's cars.

On this evidence, the jury could reasonably find that Alston both knowingly participated in the conspiracy and knew, based on the quantity of drugs he personally saw Reyes handle, that Reyes was dealing in more than five kilograms of cocaine. Even if Alston had not himself seen numerous bags of cocaine, the jury could have inferred that Alston knew that the conspiracy involved five or more kilograms of cocaine in light

12

of the number of deliveries Alston made with Reyes and the lavish lifestyle that Reyes's business evidently supported.

It is true that this narrative is supported primarily by Reyes's testimony, corroborated by testimony given by others regarding particular incidents during which Alston discussed drugs with Reyes and others or was present at a drug deal. But Alston's contentions that Reyes's testimony was either not corroborated, or was inadequately corroborated, by other evidence presented at trial, or that tension between different witnesses' accounts of the various drug transactions undercuts their probative value, have little force on appeal, because "[a]ny lack of corroboration goes only to the weight of the evidence, not to its sufficiency." *United States v. Hamilton*, 334 F.3d 170, 179 (2d Cir. 2003) (internal quotation marks omitted). Moreover, where one witness's trial testimony conflicts with that of another witness, "we must defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses." *Id.* (internal quotation marks omitted). Alston asserts further in support of his sufficiency argument that certain witnesses did not provide credible testimony. The jury, however, not this Court, is the proper arbiter of that claim. *See id.*

B. Section 924(c) conviction: possession of a firearm in furtherance of drug trafficking

Section 924(c) of title 18 requires imposition of a consecutive five-year term of imprisonment for a person who, "in furtherance of any [drug trafficking] crime, possesses a firearm." Alston argues that the evidence at trial was not sufficient to convict him of violating section 924(c) for two reasons: first, because his possession of a service weapon cannot, as a matter of law, constitute a federal crime; second, because

13

the evidence showed that his possession of the shotgun in connection with the nightclub altercation involved a "romantic dispute," not a drug trafficking crime. Appellant's Br. 25. We disagree.[4]

### 1. Possession of a service weapon during drug transaction transport

Alston contends that, as a law enforcement officer, he may not be convicted under section 924(c) when the firearm in question is his service weapon. He argues that he was required by the NYPD Patrol Guide to carry his service weapon with him at all times. Therefore, he insists, he could not violate section 924(c) by possessing his service weapon while he drove Reyes to and from drug transactions.

Alston's argument is meritless. The trial record offers ample evidence from which a jury could infer that Alston carried his service weapon not because he was obligated to do so, but for the purpose of protecting Reyes during the drug transactions. For example, Reyes testified that Alston assured him that he "had [Reyes's] back" if anything happened. Tr. 121. Reyes understood the statement to mean that Alston would protect him, including by using his gun, in the event that Reyes was robbed or otherwise threatened. In this critical way, Alston supported Reyes in his drug business: he "kept [Reyes] safe." *Id.* at 94.

A law enforcement officer who possesses or uses a service weapon in furtherance of a drug trafficking offense has no immunity from conviction under section 924(c). *See*

---

[4] At oral argument, Alston's counsel argued that Alston should prevail on appeal if either the evidence regarding the service weapon or the evidence regarding the shotgun was insufficient to establish a violation of section 924(c). Because we find that the evidence regarding both the service weapon and the shotgun is sufficient, we do not address that contention here.

*United States v. Vazquez Guadalupe*, 407 F.3d 492, 500 n.4 (1st Cir. 2005) (rejecting as "plainly wrong" defendant's argument that his section 924(c) conviction was unsupported by evidence because his firearm possession was "an inherent part of his employment as a police officer"); *United States v. Gonzalez*, 528 F.3d 1207, 1214 (9th Cir. 2008) (rejecting argument that use of a weapon issued by Border Patrol was "categorically exempted from possible prosecution under § 924(c)"). Even if, as Alston contends, he carried his service weapon at least in part because the NYPD Patrol Guide may have required him to do so,[5] we have observed that "a gun may be possessed for multiple purposes." *United States v. Lewter*, 402 F.3d 319, 323 (2d Cir. 2005). Possession of a firearm because one believes it necessary to comply with employment conditions "does not preclude possession in furtherance of a drug trafficking offense" in violation of section 924(c). *Id.*

Federal and state laws do provide some limited exemptions for law enforcement officers from legal restrictions on the possession or carrying of firearms. *See* 18 U.S.C. § 926B(a) (providing that "qualified law enforcement officer[s]" may carry a concealed firearm notwithstanding certain state laws); N.Y. Penal Law § 265.20(a)(1) (providing that certain New York laws restricting possession of firearms do not apply to, inter alia,

---

[5] We offer no view about whether the NYPD Patrol Guide in fact obligates officers generally to carry their service weapons, but we note that the NYPD Patrol Guide also provides that off-duty NYPD officers "are to be unarmed at their own discretion when engaged in any activity of a nature whereby it would be advisable NOT to carry a firearm." New York Police Department Patrol Guide, No. 203-15(h), (effective Aug. 1, 2013), https://www1.nyc.gov/assets/nypd/downloads/pdf/public_information/public-pguide1.pdf (last visited June 26, 2018). Any obligation imposed by the Patrol Guide in this respect is thus less than categorical.

15

"[p]olice officers"). But Alston was not convicted for merely possessing his service weapon. Rather, the District Court carefully informed the jury that "[m]ere possession of a firearm *is not enough* for possession to be in furtherance." Tr. 1082 (emphasis added). In convicting Alston, the jury was instructed that it had to find his possession to have been "incident to and an essential part of some federal drug trafficking crime." *Id.* The District Court explained that such a finding was a necessary predicate to a conviction under section 924(c). *Id.*; *see Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (recognizing "almost invariable assumption of the law that jurors follow their instructions"). We see no reason to disturb the jury's finding in this regard.

### 2. *Possession of a shotgun at Reyes's meeting with BX Hova*

Alston also argues that the evidence at trial was insufficient to establish that his 2014 possession of a shotgun—an alternative basis for his firearm possession conviction—violated section 924(c).

Alston challenges this conclusion, contending that the trial evidence establishes only that he possessed the gun in connection with a social matter—Reyes's dispute with BX Hova over a matter of romance—and not "in furtherance of" any drug crime.

Alston is correct that, to sustain a conviction under section 924(c), "the government must establish the existence of a specific 'nexus' between the charged firearm and the [federal drug trafficking crime]." *United States v. Chavez*, 549 F.3d 119, 130 (2d Cir. 2008) (alteration in original) (quoting *United States v. Snow*, 462 F.3d 55, 62 (2d Cir. 2006)). The "fact-intensive" nexus inquiry comes down to the question whether the firearm "afforded some advantage (actual or potential, real or contingent) relevant to the vicissitudes of drug trafficking." *Id.* (quoting *Snow*, 462 F.3d at 62).

16

Reyes's testimony sufficed for the jury to find the requisite nexus between Alston's possession of the shotgun and the cocaine distribution activities with which he was involved. Reyes explained that he had met with BX Hova face-to-face *because* their common supplier, Vargas, had advised them that their conflict was "bad for business." Tr. 233. The jury could reasonably find that Alston's presence as Reyes's armed protector served to embolden Reyes to resolve the dispute, enabling Reyes, BX Hova, and Vargas to pursue their drug businesses without this distraction, and, potentially, to dissuade BX Hova from attacking Reyes, which might have harmed the same businesses. Accordingly, we conclude that, although the genesis of the Reyes-BX Hova dispute was primarily social, the jury was entitled to find that its resolution was drug-related.

## II. Denial of Rule 33 motion

Under Federal Rule of Criminal Procedure 33, a district court may "vacate any judgment and grant a new trial if the interest of justice so requires." In evaluating a Rule 33 motion, the court must "examine the entire case, take into account all facts and circumstances, and make an objective evaluation," keeping in mind that the "ultimate test" for such a motion is "whether letting a guilty verdict stand would be a manifest injustice." *Aguiar*, 737 F.3d at 264 (internal quotation marks omitted). We review a district court's denial of a Rule 33 motion for abuse of discretion; we assess its findings of fact in connection with such a denial for clear error. *United States v. Wong*, 78 F.3d 73, 78 (2d Cir. 1996).

Alston argues that his due process rights were violated when the government failed to correct testimony in which Reyes purported truthfully to disclose his

17

employment history and list his previous crimes. These violations, Alston urges, entitle him to a new trial.

The government "may not knowingly use false evidence, including false testimony, to obtain a tainted conviction." *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (finding due process violation where prosecuting attorney did not correct cooperating government witness's false testimony that he had not received consideration for his testimony). If the prosecution "knew or should have known of [a witness's] perjury, a new trial is warranted if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Wong*, 78 F.3d at 81 (internal quotation marks omitted).

Alston contends that Reyes falsely testified that his last "legal job" was in 2008 or 2009; in fact, Alston asserts, in 2013, Reyes also invested in a car wash business, giving him a "legal job" in the business.[6] Tr. 301, 365. In addition, Alston claims that Reyes invested in the car wash with money he earned through drug trafficking activities, and this constituted money laundering. He argues that Reyes therefore also testified falsely when he failed to mention money laundering in his testimony about his past criminal activity.[7]

---

[6] Alston asserts that Reyes "leased" the car wash business from January 2011 until September 2014, but he points to no record evidence supporting that assertion. *See* Appellant's Br. 3.

[7] When questioned, Reyes described a number of past criminal offenses, but money laundering was not among them:

> Q: Apart from dealing drugs, having guns, and making false statements which you mentioned earlier, have you committed other crimes—

18

Alston has not shown that Reyes's testimony regarding either his employment or his criminal history was, in fact, false, much less that the government knew of any falsity during its direct examination of Reyes. We see no reason why Reyes or the government would have considered any partial ownership or "leas[ing]" by Reyes of a car wash business to be a "job," particularly in light of Reyes's testimony that he did not run the business, but was merely an investor. Appellant's Br. 31.

Even if we assume *arguendo* that Reyes did violate some statute related to money laundering, Alston identifies no reasonable basis for the inference that, during its direct examination of Reyes, the government was in fact aware of that Reyes was laundering money as Alston alleges. That Reyes had multiple proffer sessions with government officials, without more, hardly supports the conclusion that the government had any relevant knowledge at the time.

Finally, we see no reason to think that the government's failure to elicit details about Reyes's car wash business on direct examination could have affected the jury's assessment of the evidence as a whole. On cross-examination, Alston's attorney questioned Reyes about his part in the car wash venture and established that Reyes had purchased the car wash in 2013 and owned it for "a quick few months." Tr. 365. Reyes

---

A: Yes, I have.
Q: —in your life? Can you just generally tell the jury what sort of crimes.
A: I got locked up when I was young with a gun. I got locked up for suspended license. I got locked up for hitting an officer.
Q: Any theft or stolen property offenses?
A: Yeah, I got locked up for stolen property. That's about it.

Tr. 301-02.

19

also confirmed that Alston visited him at the car wash. Thus, to the extent that Alston argues that the car wash testimony was material because it "bolstered Defendant's reasonable perception that Reyes was 'legit,'" Appellant's Br. 33, Alston had the opportunity to make that argument to the jury based on Reyes's testimony on cross-examination. We see no abuse of discretion in the District Court's denial of Alston's motion for a new trial on this basis.

**III.    Reyes's jailhouse misconduct**

In Alston's view, Reyes's jailhouse misconduct, and the government's denial of Alston's post-conviction discovery requests about that misconduct, constitute a *Brady* violation requiring grant of a new trial. *Brady* violations have three elements: "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

Even treating Reyes's jailhouse misconduct as potentially worthy impeachment evidence, it is not *Brady* material. The government did not "suppress" the evidence at issue, because Reyes's misconduct did not occur (and therefore the evidence did not exist) until *after* Alston's trial was concluded. Here, so far as the record shows, the government appropriately disclosed what it learned about Reyes's misconduct promptly after the information came to its attention. The government obviously is not required to disclose before or during trial information that it only learned after trial was over. *See United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998). Nor, in any event, did Alston suffer prejudice at trial from his ignorance of Reyes's post-trial possession of

20

contraband, because Alston could not have cross-examined Reyes about misconduct that Reyes had not yet committed. The District Court, therefore, did not err in denying Alston discovery relating to Reyes's jailhouse misconduct, and Alston's *Brady* allegations do not entitle him to a new trial.

**IV.    Sentencing challenges**

Finally, Alston contends that his sentence is procedurally unreasonable. He challenges three facets of the District Court's calculation of his Guidelines range: (a) its denial of a two-level reduction to account for his allegedly minor role in the drug conspiracy; (b) its imposition of a two-level enhancement for obstruction of justice; and (c) its imposition of an additional two-level enhancement for abuse of a position of trust.

A district court "commits procedural error where it . . . makes a mistake in its Guidelines calculation." *United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008) (en banc) The usual remedy for such a procedural error is vacatur of the sentence and remand for resentencing. *Id.* We review de novo a district court's interpretation of the Guidelines and for clear error its factual findings regarding the applicability of specific enhancements or reductions. *See United States v. Richardson*, 521 F.3d 149, 156 (2d Cir. 2008).[8]

---

[8] We note that, although not for the reasons identified by Alston, the District Court did err, because it failed fully to calculate Alston's applicable Guidelines range. At sentencing, the District Court refused to make a factual finding regarding the drug quantity for which Alston

21

### A.    Minor role reduction

Section 3B1.2 of the Sentencing Guidelines provides for a two-level decrease in the defendant's offense level "[i]f the defendant was a minor participant in any criminal activity." U.S. Sentencing Guidelines Manual § 3B1.2(b) (U.S. Sentencing Comm'n 2016). Alston contends that he was entitled to such a reduction in his offense level as a "minor participant." The Guidelines tell us that a "minor participant" is a defendant "who is less culpable than most other participants in the criminal activity." *Id.*, application n.5.

---

was responsible. The quantity calculation would have determined in part Alston's base offense level.

In declining to do so, the District Court reasoned that

> [t]he use of the drug quantity suggested by the government, 200 kilograms, based on foreseeability, would result in a guideline sentence that would be greater than necessary to effectuate the goals of 18 [U.S.C.] Section 3553(a). The use of the drug quantity actually found by the jury, which is over 5 kilograms, or between 5 and 15 kilograms, I have concluded is, under the circumstances, more appropriate, and that is what I will use; and that matter is now decided.

App't A. 480.

A district court bears the "ultimate responsibility to ensure that the Guidelines range it considers is correct," even if it goes on to determine that a sentence located outside the defendant's Guidelines range is appropriate. *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904 (2018); *see also United States v. Genao*, 869 F.3d 136, 146 (2d Cir. 2017) (noting that "the Guidelines should be the starting point and the initial benchmark" for criminal sentences (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007))). Our Court has thus advised district courts that it is "important" to calculate each defendant's Guideline range "strictly and correctly." *Genao*, 869 F.3d at 147. The District Court here erred by failing to calculate Alston's Guidelines range accurately and completely as its starting point. We nevertheless decline to vacate and remand Alston's sentence on the basis of this procedural error, because, to the extent the error affected Alston's sentence, it inured to his benefit by lowering his overall Guidelines range, and the government did not appeal the District Court's Guidelines calculation.

22

Earlier versions of the Guidelines Manual than that applicable to Alston defined a "minor participant" as a defendant "who is less culpable than most other participants." *See, e.g.*, U.S. Sentencing Guidelines Manual § 3B1.2, application n.5 (U.S. Sentencing Comm'n 2014); U.S. Sentencing Guidelines Manual § 3B1.2, application n.3 (U.S. Sentencing Comm'n 2000); U.S. Sentencing Guidelines Manual § 3B1.2, application n.3 (U.S. Sentencing Comm'n 1990). These versions did not explain which "participants[']" roles should be compared to the defendant's when determining relative culpability. They left uncertain whether the sentencing court should compare the defendant's role to that of the other individuals who participated in his specific crime, or (more generally) to that of other participants in the same type of criminal activity.

Our Circuit adopted the latter view and interpreted section 3B1.2 to require that district courts gauge a defendant's culpability "as compared to the average participant in such a crime." *United States v. Rahman*, 189 F.3d 88, 159 (2d Cir. 1999). We rejected attempts to focus a district court's analysis on the specific co-participants in the defendant's criminal activity. *See, e.g.*, *United States v. Ajmal*, 67 F.3d 12, 18 (2d Cir. 1995). Other circuits took a different approach and held that the relevant comparators for section 3B1.2 purposes were a defendant's "co-participants in the case at hand." *United States v. Benitez*, 34 F.3d 1489, 1498 (9th Cir. 1994); *see also United States v. DePriest*, 6 F.3d 1201, 1214 (7th Cir. 1993).

In 2015, the Sentencing Commission resolved this division by adopting Guidelines Amendment 794. The amendment clarified the Commission's intention that a defendant be treated as having a "minor role" in a crime for purposes of section 3B1.2

23

when he "is less culpable than most other participants *in the criminal activity*." U.S. Sentencing Guidelines Manual § 3B1.2, Amendment 794 (effective November 1, 2015) (emphasis added). The Sentencing Commission explained that it was "generally adopt[ing] the approach of the Seventh and Ninth Circuits," and instructed courts to determine "the defendant's relative culpability . . . only by reference to his or her co-participants *in the case at hand*." *Id.* (emphasis added). "Focusing the court's attention on the individual defendant and the other participants," the Sentencing Commission explained, was "more consistent" with the rest of the Guideline than was focusing on participants in the type of criminal activity in which the defendant had engaged. *Id.* Amendment 794 became effective on November 1, 2015—long before Alston was sentenced.

In its submissions to the District Court and to this Court, the government has continued to cite our Circuit's "minor role" standard dating from before Amendment 794 took effect. To the extent the government intends to argue that our interpretation of section 3B1.2 in earlier Guidelines Manuals has survived Amendment 794, we must reject that argument.[9] We accord the Sentencing Commission's interpretation of its own Guidelines "controlling weight unless it is plainly erroneous or inconsistent with the regulation or violates the Constitution or a federal statute." *United States v. Lacey*, 699 F.3d 710, 716 (2d Cir. 2012) (internal citations omitted). Thus, in the version of

---

[9] We have previously vacated a sentence imposed in the United States District Court for the Southern District of New York on precisely this basis, albeit in a non-precedential summary order. *See United States v. Soborski*, 708 F. App'x 6, 10–14 (2d Cir. 2017). We expect that, having clarified the impact of Amendment 794 in this opinion, the government will take note in future sentencing proceedings of the updated standard for "minor role" reductions.

section 3B1.2 in effect after the adoption of Amendment 794—including the version in the 2016 Guidelines Manual under which Alston was sentenced—the applicability of a "minor role" reduction depends on the nature of the defendant's role in comparison to that of his co-participants in his criminal activity.

Applying this updated standard to the case before us, however, we find no procedural error in the District Court's refusal to grant Alston the two-level reduction. At sentencing, the District Court reasonably rejected the contention that Alston "was less culpable than his confederates" in light of his "status as a police officer, as an armed enforcer, and as what the government aptly described as a law enforcement spy." App't A. 485. Although Alston did not procure or sell drugs himself, as Reyes did, he nonetheless played a critical part in Reyes's operations. Alston was directly responsible for preventing the two most significant threats to a drug conspiracy—law enforcement, on one hand, and violence from other criminals, on the other—from interfering with Reyes's trafficking activities. The District Court committed no clear error in finding, therefore, that Alston's role in the drug conspiracy was thus not "minor," and that he was not entitled to a two-level offense reduction under section 3B1.2.

B.     Obstruction of justice enhancement

Section 3C1.1 of the Sentencing Guidelines provides for a two-level increase "[i]f (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense." U.S. Sentencing Guidelines Manual § 3C1.1 (U.S. Sentencing Comm'n 2016).

Alston contends that this enhancement should not have been applied and that the District Court mistakenly focused on conduct that preceded his arrest and preceded his learning that Reyes was the subject of an investigation. We disagree.

The government introduced into evidence a recorded telephone call in which Alston warned Vargas, Reyes's supplier, that he (Alston) was on his way to a specific location "[b]y the corner" to "snatch somebody up." Gov't Trial Ex. 726-T. In the call, Alston advised Vargas to warn others "to ghost, to be gone." *Id.* And, in a different recorded phone call, another co-conspirator passed on a message from Alston to Vargas: Vargas's name was "going around there," the message went; Vargas "should be on the alert"; and Alston would not speak to Vargas on the phone. Gov't Trial Ex. 723-T. At sentencing, the District Court explained that it interpreted these recordings to mean that Alston was instructing Vargas "not to talk on the phone because he was under investigation, and to avoid a certain area of the precinct because Alston was going to have to go there to make an arrest." App't A. 486. Based on this evidence, the District Court found it "beyond dispute" that Alston had obstructed justice. *Id.*

We identify no error, much less clear error, in the District Court's interpretation of Alston's phone calls with Vargas, and we agree that the calls constitute obstruction of justice. *See United States v. Hernandez*, 83 F.3d 582, 585 (2d Cir. 1996) ("The sentencing court's findings of fact regarding the obstruction of justice enhancement are subject to the clearly erroneous standard, while its ruling that the established facts constitute obstruction of justice . . . is reviewed *de novo* . . . ." (quoting *United States v. Rivera*, 971 F.2d 876, 893 (2d Cir. 1992))). We have previously held that merely alerting the subject of an investigation to the existence of that investigation can constitute "obstruction of

26

justice" within the meaning of section 3C1.1. *See United States v. Cassiliano*, 137 F.3d 742, 746-47 (2d Cir. 1998). It is even easier for us to conclude, therefore, that advising a drug dealer about the imminent risk of arrest—permitting him to evade capture—constitutes such obstruction.

## C.     Enhancement for abuse of a position of trust

Finally, Alston challenges the District Court's application of a two-level enhancement for abuse of a position of trust. Section 3B1.3 of the Sentencing Guidelines provides for a two-level increase "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." U.S. Sentencing Guidelines Manual § 3B1.3 (U.S. Sentencing Comm'n 2016). We have applied a two-pronged test to determine whether this enhancement applies: we ask "(1) whether the defendant occupied a position of trust from the victim's perspective and (2) whether that abuse of trust 'significantly facilitated the commission or concealment of the offense.'" *United States v. Huggins*, 844 F.3d 118, 124 (2d Cir. 2016) (quoting *United States v. Thom*, 446 F.3d 378, 388 (2d Cir. 2006)).

Identifying the victims of a drug distribution conspiracy is more difficult than identifying the victims of, for example, a wire fraud scheme. But it hardly follows that we should treat Alston's crime as victimless for purposes of assessing the applicability of this enhancement. There can be no doubt that drug crime of the kind engaged in by Alston and Reyes, involving illegal cocaine distribution supported by firearms, causes broad social harm. *See Harmelin v. Michigan*, 501 U.S. 957, 1002-03 (1991) (Kennedy, J., concurring) (considering "the pernicious effects of the drug epidemic in this country");

27

*United States v. Green*, 532 F.3d 538, 549 (6th Cir. 2008) ("Society as a whole is the victim when illegal drugs are being distributed in its communities."). And, from the perspective of society writ large, a police officer indisputably holds a "position of trust" when it comes to detecting and preventing drug crime. *See United States v. Rehal*, 940 F.2d 1, 5 (1st Cir. 1991). Society is victimized in a particularly malign way when a police officer aids crime instead of stopping it. Thus, the first prong of the analysis is met here.

As to the second prong of the analysis, the record establishes that Alston used his position as a police officer both to facilitate and conceal the drug distribution conspiracy in which he participated. While he was on duty, Alston helped to ensure that a fellow NYPD officer conducting a traffic stop of Reyes did not search Reyes's car. Alston knew that Reyes had cocaine in plain view in the car, and, because he was not searched and the cocaine was not discovered, Reyes went on to sell the cocaine. This incident, standing alone, provides a sufficient basis for the District Court's decision to impose the "abuse of trust" enhancement. But Alston went even further, giving Reyes a PBA card to help him avoid suspicion during traffic stops when Alston was not able to intervene personally on Reyes's behalf. It is difficult to imagine a more obvious "abuse of trust" than Alston's use of his authority: he held that authority as a privilege of his position as a New York City police officer, and he used that authority to help a drug trafficking criminal evade detection and capture.

We find no error in the District Court's imposition of a two-level enhancement for abuse of trust under section 3B1.3.

## CONCLUSION

We have reviewed Alston's remaining arguments and find in them no basis for vacating his convictions or sentence. For the reasons set forth above, we **AFFIRM** the judgment of the District Court.