21-837-cr
*United States v. Carpenter*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of November, two thousand twenty-two.

PRESENT:
> PIERRE N. LEVAL
> DENNY CHIN
> EUNICE C. LEE,
> > *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

    *Appellee,*

   v.           No. 21-837-cr

LARRY CARPENTER,

    *Defendant-Appellant.*

_____

For Defendant-Appellant:   JOSEPH FERRANTE, Keahon, Fleischer & Ferrante, Hauppauge, New York.

For Appellee:   ADAM R. TOPOROVSKY (Jo Ann M. Navickas, *on the brief*) *for* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, New York.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Brown, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Following a June 24, 2018 arrest for selling drugs during a "buy-and-bust" operation, Defendant-Appellant Larry Carpenter was indicted for two controlled substance distribution charges and two firearm charges. He pleaded guilty to the two controlled substance distribution charges. On December 12, 2018, a grand jury returned a second superseding indictment, which added new counts that charged Carpenter with conspiracy to distribute 280 grams or more of cocaine base and conspiracy to distribute heroin in violation of 21 U.S.C §§ 841(a)(1) and 846 ("Count One"); unlawful use of a firearm during and in relation to a drug offense in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 3551 ("Count Two"); and felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 3551 ("Count Three"). Carpenter pleaded not guilty to the second superseding indictment.

At trial, which was bifurcated so that the jury would consider Counts One and Two before hearing about Carpenter's prior felony conviction in connection with Count Three, the government sought to prove the existence of coconspirators and Carpenter's unlawful use of a firearm through, among other things, testimony from Carpenter's customers; Carpenter's rap lyrics and rap music videos; and testimony from various law enforcement officers. Carpenter sought to bar admission of his rap lyrics and videos but was overruled. Carpenter also sought to exclude certain law enforcement expert testimony, which resulted in a ruling limiting the extent of the expert testimony that would be allowed.

Three of Carpenter's former drug customers testified: Jerold Rubin, Scott Allen, and Donna Salter. All three testified that they had each individually purchased crack from Carpenter

2

anywhere from 50 to 800 times in increments of about $100 per gram. Additionally, each testified that Carpenter conducted his business in conjunction with a woman. For example, Rubin said a woman was often in the car with Carpenter during drug deals, would often answer Carpenter's phone to take drug orders, and often would drive herself to Rubin to deliver the drugs he had ordered from Carpenter. Allen's testimony was similar. Additionally, both Rubin and Salter testified that Carpenter had made reference to his having a gun on him when they got into disputes with him over drug prices.

During a DEA agent's testimony, the jury heard excerpts of communications from two cell phones that had been seized when Carpenter was arrested. Carpenter exchanged several text messages with a contact listed in his phone as "Drugby" that appeared to be about supplying and selling drugs on Long Island, including a message to which Carpenter attached a photograph of "a scale with a white powdery substance in a bag." Joint App'x at 733. Carpenter's phone also showed communications between him and a woman named LaToya Mitchell, which included communications about giving her debit-like cards he received from a drug customer and about losing his 'trap phone.'" Id. at 735. On June 27, 2018, in a phone call that was recorded, Carpenter told Mitchell to "clear the drawers out, clear everything out, in the kitchen, everything," to which Mitchell replied, "I did that already. Why do you think I went there yesterday?" Id. at 1279. That same day, Carpenter asked Mitchell, via email, "to take down that might not make it home [music] video ASAP." Id. at 757.

Some of Carpenter's rap lyrics and rap music videos were presented at trial, including a music video that had been uploaded to YouTube called "might not make it home." Id. The video showed Carpenter posing with a gun, and the government argued, based on enhanced photography

3

showing identifying marks, that this was the same gun as one that had been seized at the time of Carpenter's arrest. Carpenter's lyrics, which were presented as part of a DEA agent's testimony, spoke about drug-dealing, with phrases including "I trap coke and dope the same time" and "we was selling dope it was trap houses cooking coke." *Id.* at 771. Carpenter's lyrics also included "Drugby, he stacking and flipping," *id.*, and they spoke in the first person about Carpenter's working in conjunction with a woman to sell drugs, including that this woman sometimes drove his car in the course of selling drugs. Further, Carpenter's lyrics mentioned guns, including multiple references to "this 38 revolver" and a "rusty 38." *Id.*

In addition, DEA Task Force Officer Robert Stueber testified, over defense objection, as an expert witness. The district court allowed the testimony, limited to explaining drug terminology like "hard," "soft," and "dog food"; "how drugs are prepared"; and that drugs are "manufactured outside New York." Joint App'x at 528. Stueber was also permitted to testify to how cocaine is cooked into crack and that "trap" often refers to "selling drugs." *Id.* at 889–91, 925–33. Stueber further testified that cocaine is often cooked into crack in a kitchen.

During a charging conference, the defense asked the district court to give the jury a "multiple conspiracies" instruction explaining that it would be impermissible to convict Carpenter on Count One by considering multiple small conspiracies and adding them together. After the government asserted that it was advancing the theory of a single conspiracy—one of spoke-and-wheel with Carpenter at the center—the district court rejected the multiple conspiracies instruction as too confusing. The district court ultimately instructed the jury on a "buyer-seller" defense: "the mere purchase and sale of drugs does not, without more, amount to a conspiracy to distribute narcotics. However, you may find conspiracy where there is additional evidence showing an

4

agreement to join together to accomplish an unlawful objective beyond the sale transaction." Joint App'x at 1023.

On March 28, 2019, the jury convicted Carpenter on Count One and Count Two. Carpenter was then tried on Count Three, and the jury convicted him on that count as well. Carpenter timely appealed.

*     *     *

Carpenter raises four arguments. *First*, Carpenter argues that the evidence was insufficient to show conspiracy because it at most showed multiple buyer-seller relationships with Carpenter's customers, and because the various references to an unidentified woman could not show that Carpenter conspired with her. This argument must be rejected. On this appeal, we cannot reweigh the evidence presented at trial; instead, we must afford a "high degree of deference" to the jury's "conviction of conspiracy." *United States v. Landesman*, 17 F.4th 298, 320 (2d Cir. 2021) (internal quotation marks omitted). The jury may infer elements of the conspiracy, including the conspiracy's existence, from circumstantial evidence. *See id.* Furthermore, a conspiracy charge may stand even where coconspirators are unknown, as long as "[t]he evidence . . . support[s] the existence of the unknown people with whom the defendant allegedly conspired." *United States v. Harris*, 8 F.3d 943, 946 (2d Cir. 1993). As such, it would have been reasonable for the jury to have inferred that Carpenter conspired with the unidentified woman to distribute narcotics in amounts sufficient to prove Count One, especially given that Carpenter's own rap lyrics corroborated his customers' testimony about having seen a woman with him who helped him to deal drugs out of the green Honda in which he was arrested. *See, e.g.*, Joint App'x at 771 ("[B]ut she gone hold the drugs while she drive, and I gotta weapon . . . I got

5

fire in my trunk and it's just me and my baby. I been strapping out this Honda . . . She been driving all night."), 772 ("I'm riding round strapped trapping phones, get to bugging, always keep a hood bitch with me. She ain't with nothing. She know how to cut the dope.").

*Second*, Carpenter argues that his rap lyrics and his music video were improperly admitted at trial in violation of Federal Rule of Evidence ("FRE") 403, as well as that the First Amendment protects his rap lyrics as a form of artistic expression. This is unavailing. "Rap lyrics . . . are properly admitted . . . where they are relevant and their probative value is not substantially outweighed by the danger of unfair prejudice." *United States v. Pierce*, 785 F.3d 832, 841 (2d Cir. 2015). A district court can thus admit them after conducting a FRE 403 balancing. *See, e.g.*, *United States v. Herron*, 762 Fed. App'x 25, 30 (2d Cir. 2019). The First Amendment is no bar to the evidentiary admission of rap lyrics where, as here, the artistic expression "is not 'itself the proscribed conduct.'" *Pierce*, 785 F.3d at 841 (quoting *United States v. Caronia*, 703 F.3d 149, 161 (2d Cir. 2012)). Evidence that does "not involve conduct more inflammatory than the charged crime" generally will not "violate Rule 404(b) or 403" when it is "relevant to an issue at trial other than the defendant's character, and if its probative value is not substantially outweighed by the risk of unfair prejudice." *United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999). Here, Carpenter's rap lyrics and rap music videos speak with specificity to the precise conduct with which he was charged. The district court thus did not err in allowing it to be presented to the jury.

*Third*, Carpenter argues that Stueber's expert testimony was improperly presented because the jury did not need an expert to understand the drug terminology at issue, and because the testimony was only offered by the government as a form of impermissible bolstering. "Given the attempts of drug dealers to disguise the content of their discussions as legitimate subject matters,

courts may allow witnesses to 'decipher' the codes drug dealers use and testify to the true meaning of the conversations. Testimony about the meaning of alleged code is admissible as lay opinion testimony under Fed. R. Evid. 701, or as expert testimony under Fed. R. Evid. 702." *United States v. Garcia*, 291 F.3d 127, 139 (2d Cir. 2002). However, "the operations in question must have esoteric aspects reasonably perceived as beyond the ken of the jury," and any "expert testimony cannot be used solely to bolster the credibility of the government's fact-witnesses by mirroring their version of events." *United States v. Cruz*, 981 F.2d 659, 664 (2d Cir. 1992).

Here, beyond discussing drug terminology, Stueber's expert testimony also explained that crack is often cooked in a kitchen, which had independent probative value given the government's position that Carpenter's directing Mitchell to clear out the kitchen was evidence that Carpenter had been cooking the crack he sold in the kitchen. This information is sufficiently esoteric such that it was proper for the district court to have admitted testimony on the topic. Furthermore, even if Stueber's testimony on drug terminology was erroneously admitted, it is not clear how this could have harmed Carpenter. That is because Carpenter conceded to the jury in summation that he was a drug dealer, with his defense being that he was only a "small-time" dealer, not someone engaged in a narcotics conspiracy. *See, e.g.*, Joint App'x at 1012; *see also United States v. McGinn*, 787 F.3d 116, 127 (2d Cir. 2015) ("The error was harmless if it is not likely that it contributed to the verdict.").

*Fourth*, Carpenter argues that the government did not provide evidence sufficient to prove Count Two because it did not show a nexus between the gun found during Carpenter's arrest and any of the drug-dealing conduct charged. To prove a count under 18 U.S.C. § 924(c), "the government must establish the existence of a specific 'nexus' between the charged firearm and the

federal drug trafficking crime," which is a "fact-intensive . . . inquiry" turning on "whether the firearm afforded some advantage (actual or potential, real or contingent) relevant to the vicissitudes of drug trafficking." *United States v. Alston*, 899 F.3d 135, 146 (2d Cir. 2018) (alteration marks and internal quotation marks omitted). Here, both Rubin and Salter testified that Carpenter referred to his gun while selling drugs to them in a manner that caused them to feel they could not argue with Carpenter about the drugs they were buying. This is enough to meet the nexus requirement. *Cf. id.* at 146 ("[J]ury could reasonably find" the required nexus where testimony suggested that the armed defendant's presence "served to embolden [the defendant's coconspirator] to resolve [a] dispute" during drug deal).

                                        *        *        *

We have considered Carpenter's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

                                                FOR THE COURT:
                                                Catherine O'Hagan Wolfe, Clerk of Court